# Case No. 6,539.

### HITCHCOCK et al. v. TREMAINE et al.

[9 Blatchf. 385; 5 Fish. Pat. Cas. 310.] [1]

Circuit Court, S. D. New York.    Feb. 1, 1872.[2]

INFRINGEMENT OF PATENT—ESTIMATION OF PROFITS.

1. In a suit in equity for the infringement of a patent for a tremolo attachment to an organ, on taking an account of the profits derived by the defendant from dealing in such attachment, it appeared that the defendant dealt in musical instruments not having such attachment, as well as in those having it:   Held, that a proper part of the general expenses of conducting the defendant's entire business, such as clerk hire, rent of store, and the like, ought to be assigned to the dealing in such attachments, such part to bear the same proportion to the whole of such general expenses, that the sales of such attachments bore to the sales in the entire business.

[Cited in Brady v. Atlantic Works, Case No. 1,795; Winchester Repeating Arms Co. v. American Buckle & Cartridge Co., 62 Fed. 280.]

2. Such general expenses ought not to be apportioned according to the amount of profits on sales.

3. The patented attachment being a revolving fan, not including the apparatus for moving the fan, the profits on such apparatus ought not to be allowed.

[See note at end of case.]

[This was a bill in equity by Alonzo Hitchcock and others against Charles M. Tremaine and William B. Tremaine.]

[3][Exceptions to the master's report in the case of Hitchcock v. Tremaine [Case No. 6,-538]. The nature of the exceptions is sufficiently set forth in the opinion.]

Frederic H. Betts, for plaintiffs.
B. E. Valentine, for defendants.

WOODRUFF, Circuit Judge. I think the estimate of the gains and profits which the master has reported to have accrued to the defendants from the infringement of the patent of the complainants, is erroneous, and unjust to the defendants. The complainants have seen fit to proceed against the defendants for the recovery of gains and profits, treating them as trustees in that behalf; and the recovery is to be for what the defendants have realized after deducting their expenses in dealing in the infringing article. The defendants are dealers in musical instruments, including pianos, melodeons, and organs with, and organs without, the tremolo

[1] [Reported by Hon. Samuel Blatchford, District Judge. and by Samuel S. Fisher, Esq.. and here compiled and reprinted by permission. The syllabus and opinion are from 9 Blatchf. 385. and the statement is from 5 Fish. Pat. Cas. 310.]

[2] [Affirmed in 23 Wall. (90 U. S.) 518.]

[3] [From 5 Fish. Pat. Cas. 310.]

attachment which has been decreed to be an infringement of the complainants' patent. See Hitchcock v. Tremaine [Case No. 6,538]. The conduct of their business necessarily involves certain general expenses, which are as truly expenses of dealing in one class of goods as of dealing in another class. Such expenses as general clerk hire, rent of store, salary of book-keeper, if any, and the like, concern the entire business, and, in any estimate of gains and profits, are properly apportionable to the several kinds of business done or kinds of goods sold, when the profits of either are to be separately stated. For example, to ascertain how much profit is gained by dealing in pianos, let it be assumed, that, of the aggregate sales in the business, one-half in amount are sales of pianos. Besides such special expenses as are peculiar to the receipt, transportation, and other peculiar service, if any, which pertains exclusively to the dealing in pianos, the general expenses are to be taken into view, one-half of which belong to the sales of pianos, as truly as the other half pertains to the sale of the other goods. This would be quite obvious, if a dealer in goods of several kinds were liable to account to some other persons, respectively, for the gains and profits which he had made by his dealing in each kind of goods. The gross proceeds of sales of each kind being ascertained, and a deduction from each being made, of such special or peculiar expenses as, in a pro forma account, would be chargeable to each, there would remain, for allotment to each account, its proportionate share of the general expenses incurred for the benefit of all, that is, for the maintenance and conduct of the business; and this distribution should be in the proportion of the several amounts of sales of each. It is not just to say, in respect to either, as is argued by the complainants here, that the general expenses are not increased by the presence of one class of goods, and would have been the same if the sales had been confined to the other classes. If that argument were supposed to prevail in an accounting for the profits of sales of one class, it would also prevail in each separate accounting, and so would be allowed in neither.

In the present case, the dealing in organs having the tremolo attachment was a part of the general business of the defendants. These were not sold without involving a part of the general expenses of the business. It may be true, that, in a given case, it costs the defendants no more to sell an organ containing the infringing attachment than it would have cost to sell an organ not containing the attachment; but, non constat, that, if the organ sold had not contained such attachment, it would not have been sold at all. The complainants are here demanding the profits of that sale. They must take them burthened with the just allowance for those disbursements which enable the defendants to offer the attachments to the public in a saleable form, and to keep them in the market, before the eye and within the reach of customers, and generally to properly conduct the business of selling and keep due account thereof.

This no one would for a moment question, if the defendants had kept a store for the sole purpose of dealing in the infringing attachments. Suppose, then, that the defendants, after dealing for a time in attachments alone, to be applied to organs by the purchasers, had concluded that it would facilitate and increase the sale of the attachments, if they procured organs, and caused the attachments, to be applied, and sold both. This would not affect the principle of computation or allowance of the general expenses, though it would bring in another item of sales, to be brought into an apportionment. And yet, in that case, it might be said, as is said here, that it costs no more to sell an organ with the attachment, than it would to sell an organ without the attachment.

In this respect, the computation by the master in this case is erroneous. He should have permitted the defendants to prove the general expenses of their business, incurred alike to effect the sales of all goods—that is, not specially incurred in reference to any particular class or kind; and these should have been apportioned according to the amount of gross sales, charging the sales of attachments with its relative share.

On the other hand, the master very properly refused to apportion these expenses according to the amount of profits on sales. Whether the defendants made any profits on their whole business or not, is quite immaterial to these complainants. They are not to be deprived of the gains made by selling the infringing attachments, because the defendants made less profits, or even no profits, on the sale of pianos, or, as the case may be, of some other musical instruments. To allow this, would permit the defendants to violate the rights of the complainants, and use the profits thereby gained to cover their losses on other sales.

In regard to the refusal of the master to permit the defendants to show that a portion of the profits on the sale of attachments, as found by him, arose from the sale of certain two parts thereof, which are not embraced within the patent of the complainants, but are patented by other parties, there was, also, apparent error. It is doubtful, indeed, whether the defendants could have proved it, if permitted, but the principle upon which they claimed to make this proof is not doubtful. The patent is for a device by which the vibration of the air is produced; namely, a fan or other instrument, made to revolve and agitate the air after it has passed the pipes or reeds which cause the sound. The means of moving the fan or beater, the complainants do not claim to be within their patent. Their instrument may be rotated by any convenient means, "such means," according to

the very terms of the specification, "constituting no essential part of the invention." It is the application of means to the musical instrument by which the air may be agitated to produce a tremulous note, as described, that is, after the air has passed the sound-producing mechanism, and the arrangement of the fan or agitator in the instrument, as described, which alone are claimed by the patentee. The motive power, whether pressure on a treadle, or other device, or the manner of applying the power, so as to cause the motion of the fan or agitator, are not claimed. This is the construction given to the patent by the court. Now, it is only the profits arising from the sale of what is patented, that the complainants should be allowed. Obviously, the expense of the apparatus for moving the patented device is to be allowed as a deduction from the proceeds of sale of the whole attachment. That expense has been allowed, in the allowance for the whole cost of the attachment, as sold by the defendants. If the defendants can show that they received an enhanced price for the patented attachment, by reason of its connection, in their sales, with a peculiar mode of producing or regulating the motion, so that the profit, or difference between the cost and the price of sale, was enhanced thereby, that enhancement is not due to the complainants. But it does not follow that the profits on the whole are to be divided into three equal parts, or into parts proportioned to the cost of the several three parts. The patented improvement must, necessarily, be supplied with some apparatus for producing motion, that is, it must be adapted to use, and the cost of such adaptation necessarily goes into the account in ascertaining the profit on the sale; and unless the defendants can show that the peculiar apparatus by which, in the instruments which they sold, the motion was imparted or regulated, gave them an increased price, not due to the patented improvement however moved or adapted to use, then the cost of such apparatus alone is to be considered, as was done by the master in stating the account. And if, upon the proofs, it be found that the price realized from the attachment is due to the patented device for causing the vibration of the air, as described in, and claimed by, the specification, irrespective of any peculiarity in the mode of producing the motion thereof, then the profits are to be imputed to the complainants' patented device, and to be allowed to them, as was done by the master.

The report must be sent back to the master, to enable the defendants to make further proofs in accordance with these views, if they be able.

[NOTE. Cross appeals were then taken to the supreme court, where the ascertainment of profits as made by the circuit court was affirmed in an opinion by Mr. Justice Strong. 23 Wall. (90 U. S.) 518. For other cases involving this patent, see note to Hitchcock v. Tremaine, Case No. 6,538.]