WINCHESTER REPEATING ARMS CO. v. AMERICAN BUCKLE & CART-
RIDGE Co.

(Circuit Court, D. Connecticut. June 28, 1894.)

Nos. 676-678.

1. PATENTS—ACTION FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
    Defendant sold certain patents, and agreed to build, deliver, and place
    two sets of the patented machinery in proper position, ready for working,
    at the factory of the purchaser, who agreed to pay $10,000 for the patents
    and $11,000 for the machinery; the contract being single, although evi-
    denced by two written agreements. The machinery infringed patents
    owned by complainants. Held, that on an accounting of profits in an ac-
    tion for the infringement, even though $10,000 was a very high price for
    the patents, no definite part thereof could be added to the profits on the
    building part of the contract, as the agreement to build and place in run-
    ning order presumptively included the right to use.

2. SAME.
    The manufacture of such machines was a single infringement, entirely
    outside of and detached from defendant's regular business. Held that,
    on an accounting of profits, the addition to cost of labor and material of
    26 1-5 per cent. for superintendence and general expenses was excessive.
    It was proper to allow the usual and reasonable salaries of managing offi-
    cers having concern with the infringing business, and for the use of tools,
    machinery, power, and other facilities employed, but not for taxes, insur-
    ance, and use of real estate owned by defendant.

Exceptions to Master's Report.

This was a suit by the Winchester Repeating Arms Company
against the American Buckle & Cartridge Company for infringe-
ment of patents. A decree was rendered for complainant, directing
an accounting. 54 Fed. 704. Both parties filed exceptions to the
master's report on the accounting.

Charles R. Ingersoll and Geo. D. Seymour, for complainant.

Henry G. Newton, for defendant.

SHIPMAN, Circuit Judge. The questions solely arise upon the
exceptions of the complainant and the defendant to the master's
report. The substantial facts which relate to the infringement are
given in the opinion upon final hearing (54 Fed. 704), except that
the defendant's contract with the Peters Cartridge Company for
the sale of its patents and the manufacture of two complete sets
of machinery and tools for making paper cartridge shells, for
$21,000, was a single one, but was evidenced in two separate written
agreements, by which the Peters Company agreed to pay $10,000
for the patents and $11,000 for the machinery. In return for this
$11,000 the defendant agreed "to build," deliver, and place the
machinery in the proper position, ready for working, at the factory
of the Peters Company in Ohio, and to deliver to it all the pat-
terns and working drawings of the machinery for making paper
shells which the defendant owned. The machinery comprised, in
addition to the two sets of wad winders, assembling machines, and
primers which infringed the Salisbury patents, 15 auxiliary, un-
patented machines, and the necessary tools. The master found
that the automatic machines were the desiderata which sold all

the auxiliary machines; that they were made to use with the two automatic patented systems covered by the complainant's patents, and were practically worthless without them; and that, if the Peters Company could not have had these patented devices, they would not have purchased the auxiliary machines. The master further found that the complainant was entitled to recover the net profits made upon the manufacture of the entire machinery. No exceptions were taken to the foregoing findings. The complainant did not contend that it could recover the profits made upon the sale of the patents as well as the profits upon the infringing machinery, but it contended that the agreement to pay $11,000 was simply for the building or the manufacture and the erection in place of the machinery, and that $10,000 was paid for the right to use the infringing machinery, and, therefore, that it was entitled to the profits upon the entire $21,000. The master reported that the contract was a single one, that $6,350, the cost of the patents, should be deducted from this nominal price of $10,000, and allowed $3,650, in addition to the profits, above the cost of the machinery. The complainant's first exception related to the deduction of $6,350, and the defendant excepted in its sixth exception to the recovery of $3,650 in addition to the profits upon the construction of the machinery.

The history of the transaction was, in my opinion, as follows: The defendant, in April, 1889, when it was manufacturing paper-shell cartridges, solicited an order, or an arrangement of some kind, for the purchase of shells, from the Peters Company. In May, 1889, it was sued by the complainant for the infringement of the wad-winding patent, and in the same month it sold to the complainant all its machinery, tools, partially made shells, and stock of paper, and went out of the business of manufacturing cartridges. It owned eight patents, six of which were issued to Amos Dickerman. One had been issued to, and one had been allowed but not issued to, William B. Place. Its patented machines were made under the supervision of Mr. Place, and it knew that the complainant claimed that the Place machines infringed one of its patents. As the defendant was going out of the cartridge business, and as the complainant had refused to buy its patents in the purchase of May, 1889, the defendant desired to find some other purchaser, and accordingly made overtures by letter of June 14, 1889, to the Peters Company to buy them, and also probably offered to manufacture for them an entire set of machinery. This letter was not in evidence, but knowledge of its contents is derived by inference from the reply of the Peters Company. That company was a competitor of the complainant, but did not own economical and successful automatic machinery. It kindly received and promptly embraced the opportunity to purchase patents for this class of mechanism, and as it was not a manufacturer of machinery, and as the defendant owned patterns and working drawings, and promised to make sets of machinery therefrom, it promptly accepted, on June 28th, the propositions for patents and sets of machinery. The purchase of the patents by the Peters Company was not simply

to get the right to use two sets of patented machinery. It wanted the entire patented right to make and use, for the unexpired term of the patents, any required quantity of machinery, and it was willing to pay $10,000 to gain this result. Presumptively, a contract by the owner of a patent to build patented machines, and place them in running order, ready for use in a factory, includes also the right to use the machines. The testimony does not show that this was not the actual contract, and no definite part of the $10,000 can be added to the profit upon the building part of the contract, upon the theory that the entire price of the machinery and of the right to use it was more than $11,000, or that a part of the supposed or theoretical price of the patents was or should be added to the $11,000 in order to ascertain the defendant's true profit upon the infringement. The defendant probably received a very high price for its patents, but this was due to the high anticipations which the Peters Company had of their value.

The master found that the actual cost of the whole machinery was $7,334.43, to which he added, for general expenses and superintendence, 26 1-5 per cent., being $1,921.62, making the total cost $9,256.05, and the profit $1,743.95. The complainant excepts to the allowance of $1,921.62.

For the purpose of showing that such a percentage for superintendence and general expenses was a fair one, the defendant gave its estimate of the annual general expenses in its buckle business, and from which it inferred that 25 per cent. for this class of expenses should be added to labor and material in ascertaining the cost of its goods. The items consist of officers' salaries, engineer's salary, teamsters' salaries, coal, oil, water, and gas, hay, feed, and barn expenses, waste, emery, and other supplies, insurance, taxes, and an excessive sum for the use of real estate and machinery. In estimating the profits of an infringer's business, where his business consists, in whole or in part, in the manufacture of infringing articles, general expenses which the conduct of the business necessarily requires are to be estimated in the ascertainment of the profits. "Such expenses as general clerk hire, rent of store, salary of bookkeeper, if any, and the like, concern the entire business, and in any estimate of gains and profits are properly apportionable to the several kinds of business done or kinds of goods sold when the profits of either are to be separately stated." Hitchcock v. Tremaine, 9 Blatchf. 385, Fed. Cas. No. 6,539. In such case, where the manufacture of the infringing article constitutes a department of the infringer's business, the expenses of the business are to be apportioned according to the amount of sales. Rob. Pat. § 1139. This case does not exactly fall within the class of cases of which Hitchcock v. Tremaine is an example. The defendant is a buckle manufacturer, and, for the purpose of inducing the Peters Company to buy its patents, undertook to make paper cartridge shell machinery. It purchased the bodies of the machines, hired a foreman and six machinists, and set them to work upon its patterns and drawings. The buckle business was the one upon which the officers were engaged, and for which they built their factory, bought

their machinery, and in which they occupied themselves, and for which they were paid salaries, and an allowance of 26 1-5 per cent. for the superintendence and general expenses of this single infringement, which was entirely outside of and detached from its regular business, is excessive. While the usual and reasonable salaries of such portion of the managing officers as have concern with the infringing business are to be allowed, the items of taxes, insurance, and use of real estate owned by the infringer are not a part of general expenses. It is proper to allow "for the use of tools, machinery, power, and other facilities employed in the manufacture." Manufacturing Co. v. Cowing, 105 U. S. 253. It is impossible to estimate with accuracy, for the defendant's testimony is not very helpful in this regard, how much ought to be allowed for this class of expenses in this case. I have concluded, rather than refer the question again to the master, to allow 10 per cent., which I consider a high estimate, upon the cost of the machines, which makes the whole cost $8,067.87, and the profit upon the entire sets of machinery $2,932.13. In the final decree, interest should be allowed upon the sum adjudged to be due as profits from November 17, 1893, the day when the master's report was submitted. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894.

The defendant took sundry exceptions to the master's findings in regard to the cost of the entire sets of machines, and also to his finding of the cost of the patented machines. I am of opinion that his findings were correct, except that 10 per cent. for general expenses, instead of 26 1-5 per cent., should be added to the particular items of cost of labor and material and of expenditures. As the questions relate exclusively to profits, and not to damages, I have not examined the subject of the willfulness of the defendant's infringement.

The second exception of the complainant and the sixth exception of the defendant are sustained. The residue of the report of the master, so far as it relates to pecuniary profits, is confirmed.