NATIONAL FOLDING-BOX & PAPER CO. v. DAYTON PAPER NOVELTY CO. et al.

(Circuit Court, S. D. Ohio, W. D. July 10, 1899.)

No. 4,524.

1. PATENTS—INFRINGEMENT—ASCERTAINMENT OF PROFITS—GENERAL EXPENSES.
   In ascertaining the profits of an infringing corporation, where the manufacture of the infringing goods constituted but one part of the business, *held*, that the corporation was not entitled, in computing general expenses, to include therein interest on dividends to its stockholders, premiums for insurance or accident insurance, taxes, attorneys' fees, and money paid to a physician for injury to an employé, but that it might include sums paid to a commercial agency for information as to credits, this being a proper part of the sale expenses.

2. SAME—EXCESSIVE SALARIES TO OFFICERS.
   In such case the corporation was not entitled to include, as part of its general expenses, the full amount of salaries paid to its officers, when it appeared that these salaries were excessive, and were really a division of profits. The court, under such circumstances, will reduce the allowance to what would seem to be a reasonable amount for salaries.

3. SAME—EFFECT OF DECISION.
   Where a manufacturing infringer, though not a technical party, in fact assumes the defense of an infringement suit against one of its vendees, bears the expense thereof, and guaranties the defendant against loss, it is bound by a decision in such suit that all the profits of the infringing device were due to the patented invention, and cannot relitigate that question in a subsequent suit against itself for infringement.

4. SAME—FOLLOWING DECISIONS IN OTHER CIRCUITS.
   A decision by a circuit court of appeals that all the profits of an infringing device are due to the patented feature thereof is of controlling weight in a suit against a different defendant in another circuit court.

Walter D. Edmonds, for complainant.
Wood & Boyd, for defendants.

TAFT, Circuit Judge. This is a suit to enjoin the infringement of the second claim of letters patent No. 171,866, to Ritter, for an improvement in paper boxes. The patent has expired, and the case now only involves a question of damages. Judge Sage held that the second claim was valid, and that it was infringed by certain boxes manufactured by the defendant. The case was then referred to the special master to ascertain and state the number of boxes made, the number used, and the number sold by the said defendant company

in infringement of the second claim of said letters patent, and the number of such paper boxes which defendant had on hand, and the profits derived by the defendant, and the damages suffered by the complainant. The decree contained this clause:

"And whereas, it is contended for the complainant that the accounting should be for the profits resulting to the defendant company from the manufacture, use, or sale of said paper boxes, and it is contended, on the other hand, for the defendant, that the accounting should be limited to the profits resulting to the defendant from the new element covered by said second claim, the court reserves all questions that may arise upon said contentions until the coming in of the master's report, but directs that the master receive testimony relevant to each of said contentions, and that he report upon said testimony in the alternative."

For reasons which appear in an opinion already filed in this case (91 Fed. 822), the reference to the master was revoked, and the question of damages submitted to the court on the evidence already produced before the master. By direction of the court and the master, the defendant prepared a statement showing the profits, as it claimed them to be, derived from the sale of the boxes found by the court to be infringements. The amount of profits admitted was $4,718.31 on 915,652 infringing boxes. I am not able, for lack of time, to make a full, detailed statement of the reasons for reaching the conclusions which I have in the case. I have examined all the evidence, and read with care all the briefs. The amount of boxes sold is shown by defendant's books to be 889,172. The defendant's account of gross sales shows that the selling price thereof aggregated $48,606.04, from which must be deducted bad debts, amounting to $356.20; making the gross receipts $48,249.84. This is admitted by complainant to be substantially correct. From this are to be deducted—First, the cost of material; second, factory cost,—labor, etc.; and, third, the percentage of the general expenses of the defendant's business properly attributable to the manufacture and sale of the boxes. We shall consider these items in their order.

The defendant, in its account, credited itself with $29,965.78 as cost of material. The complainant attacks this item as excessive, and I find that the attack is successful; that from the evidence as to the size of the boxes, the amount of material used for each box, and the cost of material, and making 5 per cent. allowance for wastage, it is entirely possible mathematically to calculate the cost of the total material used during the three years, 1889, 1890, and part of 1892. The defendant's statement is merely an estimate. The complainant's statement is based upon the books, and upon the evidence of one Bell, a bookkeeper and stockholder of the defendant, who was very familiar with the prices and details of defendant's business. It would serve no useful purpose to state in detail the calculations, but it suffices to say that, owing to an error in the estimate of defendant's account in the number of boxes per ton of material and in the price per ton of material, the cost of material, instead of being $29,967.50, should be $25,280.41. The brief of counsel for the complainant, taken with the evidence of Bell, quite satisfactorily demonstrates that there is this error in the defendant's account.

Coming now to the second item of cost, to wit, factory cost,—labor,

etc.,—defendant's estimate was $5 a thousand. Bell's testimony gives the labor required in the making up of the boxes, which, compared with the cost, because of the simplicity of manufacture, is very small, and shows that all the important items do not amount to more than $2.09 per 1,000 boxes. He allows 41 cents in addition for smaller items, difficult of calculation, and is positive that the factory cost ought not to exceed $2.50 per 1,000. His evidence has much more weight than that of Laubach, the president of the defendant, who depends merely on a general estimate, and who admits that in his $5 estimate he included $1 for printing the tops of boxes, which, in fact, was always charged to customers as an extra item, and not included in the regular prices for the boxes, or the total of sales, agreed upon as correct. I have no doubt that $2.50 is ample allowance for the factory cost of the boxes. As there are 889,172 boxes, the amount to be charged for factory cost is $2,222.93.

The remaining item is percentage of general expenses. The aggregate sales of defendant's entire business amounted to $444,128, and the aggregate sales of the infringing boxes amounted to $48,249.84. The ratio, therefore, of the total sales of infringing boxes to the total sales of the entire business is 10.86 per cent., and I shall assume that this proportion of the general expenses is to be credited to defendant in stating the account of profits on the infringing boxes, —an assumption, I may say in passing, which is exceedingly favorable to the defendant, and which I make only because the complainant does not dispute it. The fact that the amount of capital and general expenses needed in carrying on the infringing box business is much less in proportion to the profit earned than in other departments of defendant's business is apparent from the evidence, and would justify a different division of the general expenses. In the matter of general expenses the complainant concedes the correctness of the items for traveling expenses, rent, and drayage as set forth in the account of defendant. The complainant also concedes that the salaries and wages of those engaged, directly or indirectly, in the manufacture and sale of the boxes, as stated by defendant, are also correct, to wit, $21,345.15. The dispute arises with reference to the salaries of the general officers of the company, and in the amount of the interest and discount expenses, and in the miscellaneous expense account. The amount claimed by the defendant by way of interest and discount was $5,215.20. There are errors in calculation in this account amounting to $1,071.35. These errors are in favor of the defendant. In addition to this, there is included in this account $558.74 interest on dividends to Laubach, Iddings, and Shaw, stockholders. It seems to me that interest on dividends is not a charge which can be made in a suit for infringement in favor of infringers. The amount, therefore, to be credited to the defendant on account of interest and discount, instead of $5,215.20, is $3,585.11, a reduction of $1,630.09. Another item for which defendant asks credit under general expenses is insurance, amounting to $1,752. This is an improper item, and should be disallowed. Steam Cutter Co. v. Windsor Mfg. Co., 22 Fed. Cas. 1166; Winchester Repeating Arms Co. v. American Buckle & Cartridge Co., 62 Fed. 279, 280.

Under miscellaneous expenses, the defendant seeks credit for accident insurance, attorney's fees, and amount paid to a physician for an injury to one of the employés, and also for taxes. I disallow the accident insurance, $124.55; taxes, $552.87; attorneys' fees, $55, $337.50, and $83.95; and $101, injury to employé. The complainant also insists that there should be disallowed $575, paid to Bradstreet Commercial Agency for information as to credits, etc. I think that this is a proper part of the sale expenses. It is the ordinary method by which business men regulate their sales, and it may be properly charged as an expense, in the same way as the traveling expense and salary of the salesman himself. In the miscellaneous expense account the credit claimed by the defendant of $8,727.30 must, therefore, be reduced to $7,222.43. A further item insisted upon by the defendant and disputed by complainant is the item of $24,600.48, for salaries paid to Messrs. Laubach, Schmidt, and Shaw, officers and stockholders of the defendant company, during the years 1889 to 1892. This is in addition to the $21,345.15, the amount of salaries for sales clerks and other manufacturing officers engaged in the manufacture and sales of the boxes. In the case of Rubber Co. v. Goodyear, 9 Wall. 803, "the usual salaries of the managing officers" of the defendant corporation seem to have been allowed, but in subsequent cases the courts have not hesitated, where salaries seemed to be excessive, and to be really a division of the profits, to cut down this amount to a reasonable figure. Williams v. Leonard, 9 Blatchf. 476, 29 Fed. Cas. 1372; Callaghan v. Meyers, 128 U. S. 663, 664, 9 Sup. Ct. 177; Winchester Repeating Arms Co. v. American Buckle & Cartridge Co., 62 Fed. 279, 280. It seems to me that the salary expense claimed on behalf of the defendant is about double what it ought to be under the circumstances of this case, and therefore the amount will be reduced from $24,600 to $12,300. I think that this is a very liberal allowance for compensation for managing the company to be made the basis of a credit to defendant in an account of profits of these boxes. The salaries paid, considering the amount of the business, were very liberal, and give good ground for supposing that they included profits. More than this, the management of a corporation engaged solely in making the boxes in question would need to be much less expensive in proportion to the sales and profits than that of a corporation conducting other branches of defendant's business. The total of this general expense is $75,278.16, 10.86 per cent. of which is $8,179.20. This makes the total expenses $35,974.33, which, being deducted from the total of sales, $48,249.84, leaves a net profit of $12,275.51.

It is contended on behalf of the defendant that the profits of the sale of the boxes were only partially due to the patented invention of the defendant, and that it was the duty of the complainant, under the case of Mosher v. Joyce, 6 U. S. App. 107, 2 C. C. A. 322, and 51 Fed. 441, to show how much of the profit was due to the patented invention, and, in default thereof, to be content with nominal damages. The principle of law relied on cannot be questioned, but the difficulty in this case is that all the profits from the sale of these boxes were due to the invention described in the patent of the com-

plainant. It seems to me, from the statements of those who were engaged in the sale of the boxes, that the only boxes which could be sold in competition with complainant's boxes were infringing boxes, and that all others which were offered in competition were failures. The complainant filed a bill in equity against Elsas & Co. in the Second circuit for infringement of the same patent by boxes purchased from the defendant company. The defendant company paid the expenses of that suit, controlled the litigation, and guarantied Elsas & Co. against loss. The suit proceeded to an interlocutory decree finding the patent to be valid, and directing a reference. A reference was had, and the master found that all the profits from the sale of the boxes were due to the patented invention of complainant. Damages were awarded against Elsas & Co. in favor of complainant. The master's report was confirmed, the case was taken to the court of appeals, and the decree of the circuit court was affirmed. The conclusions of the master, the circuit court, and the court of appeals in the Second circuit justify my conclusion here. Certified copies of the decrees of the circuit court and the mandate of the court of appeals have been filed in this cause. A stipulation was entered into between counsel, by which evidence in the New York suit might be used in this suit, but neither by stipulation nor certificate is the master's report made evidence. The unauthenticated records have been submitted to the court, and have been discussed. I have no doubt that, under the decision in Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, if these records had been duly authenticated, the fact found by the master and confirmed by the court, that all the profits were due to the patented invention, would be conclusively established in this case against the defendant. The defendant was not nominally a party to the New York suit, but, as it controlled the litigation, and paid the expenses thereof, it became bound as a privy to the judgment. United States & Foreign Salamander Felting Co. v. Asbestos Felting Co., 28 Fed. Cas. 866. It is said the fact that all the profits on the sales of the infringed boxes were due to the patented invention was not material in the New York suit, because the recovery there was simply for damages and loss to complainant, and not for the profits made by the defendant in that suit. It seems to me, however, that the fact that the profits on the sale of the boxes were wholly due to the patented invention is necessarily a material matter in determining what the loss of the complainant's business must be in such an infringing suit, for certainly, if the defendant might have injured the complainant's business to a certain extent legitimately,—i. e. by lawfully competing with it in the sale of a noninfringing box, which would deprive it of part of its profits,—the loss from infringement would not be so great as where defendant could injure complainant's business only by sale of the infringing box.

As the records have been submitted to the court, the binding effect of the New York adjudication is plain to me. I shall give leave to the complainant, if it chooses to do so, to file as part of the record and the evidence authenticated copies of the pleadings of the New York suit and the report of the master. From the pleadings and the

master's report and the authenticated copies of the decrees already in evidence, the fact that all the profits are due to the patented invention is conclusively established. I permit complainant to file this additional evidence, both for the purpose of ending litigation, and, second, because the question of the admissibility of the New York record does not seem to have been definitely settled before the master herein. The filing of the other parts of the New York record can hardly be a prejudicial surprise to defendant, and the question of its effect, if admitted, has been fully argued upon the briefs of counsel. Even in the failure of defendant to make proper proof of the New York record for purposes of relying on res judicata as evidence, the authority of the decision of the New York circuit court and the circuit court of appeals, derived from the official reports upon the point in issue, would be of controlling weight in this hearing, both on principles of comity and also as adjudications entitled to the greatest respect. Duplex Printing-Press Co. v. Campbell Printing-Press & Mfg. Co., 37 U. S. App. 250, 16 C. C. A. 220, and 69 Fed. 250; Grand Trunk Ry. Co. v. Central Vt. R. Co., 84 Fed. 67.

Interest will be allowed on the amount found due from January 1, 1893. The defendant had full notice of complainant's rights, and chose deliberately to run the chances of the validity of the patent. I see no reason, therefore, for not including this usual element of damages in the recovery.