GORDON et al. v. TURCO-HALVAH CO., Inc., et al.

(Circuit Court of Appeals, Second Circuit. December 13, 1917.)

No. 61.

1. PATENTS ☞326(4)—INFRINGEMENT—CONTEMPT PROCEEDING.
    In cases of a colorable evasion of a decree enjoining infringement of a patent, the court has discretion either to proceed by supplementary bill or proceed directly on petition in contempt to punish the infringer.

2. PATENTS ☞312(3)—INFRINGEMENT—CONTEMPT.
    In a proceeding to punish defendants for contempt in violating a decree enjoining infringement of a patent for a bleached sweetmeat, evidence held to show that defendants' change in their product was colorable and for purposes of evasion only.

3. PATENTS ☞322—CONTEMPT PROCEEDING—REFERENCE.
    On rule to show cause why defendants should not be punished for violating a final decree enjoining infringement of a patent, the District Court on sufficient evidence passed an interlocutory order finding defendants in contempt and directed reference to a special master to ascertain the amount of the product sold in violation of the decree and profits obtained therefrom. At this hearing one of the defendants offered testimony tending to show that they were not guilty of contempt, because not having infringed the patent. Held that, defendants not having sought to reopen the proceedings before the court, so as to meet complainant's proof, the interlocutory order was final, and defendants' evidence contradicting it could not be considered on motion to confirm the master's report assessing the profits.

4. PATENTS ☞312(1), 318(6)—INFRINGEMENT—ACCOUNTING.
    Where defendants infringed complainants' patent, they are entitled to deduct from profits the amount of depreciation in value of machinery

used in manufacturing the infringing device; but, where the amount is questioned, defendants have the burden of establishing the depreciation.

5. PATENTS ☞312(3)—INFRINGEMENT—DEPRECIATION.

Testimony by a defendant that an item appearing in their account was for depreciation and discarded machinery used does not show the amount of the depreciation, being no more than a statement of the nature of the item.

6. PATENTS ☞318(6)—INFRINGEMENT—CREDITS.

Where defendants violated a decree enjoining their infringement of a patent, they are entitled to deduct from their profits moneys expended in advertising the infringing product, for such sums should be considered as any other expenses in connection with sales.

7. PATENTS ☞318(6)—INFRINGEMENT—DEDUCTION.

Where defendants, having been enjoined from infringing a patent, infringed the same, and the manufacturing of the infringing product constituted three-fourths of defendants' whole business, defendants, on an accounting for profits, are entitled to a credit of three-fourths of the taxes and insurance on their business, there being no difficulty in apportioning the items.

8. PATENTS ☞318(6)—INFRINGEMENT—CONTEMPT PROCEEDING.

Where, in proceedings to punish defendants for contempt in violating a decree enjoining them from infringing a patent, complainants made expenditures for a copy of stenographic minutes, complainants are entitled to have the expenditure allowed as a reasonable disbursement, even though it could not have been taxed in the bill of costs, for, while the court cannot impose a penalty, it has power in such a proceeding to make complainants whole for all reasonable expenses to which they have been put, including counsel fee.

Appeal from the District Court of the United States for the Southern District of New York.

Bill by George S. Gordon, Mitchel Wolf, and Harry Cowen, individually and as copartners, doing business as the Gordon-Wolf-Cowen Company, against the Turco-Halvah Company, Incorporated, Nathan Radutsky, and others. There was a decree for complainants. On order to show cause why defendants should not be punished for contempt of the decree, defendants were adjudged guilty of contempt, and the master's report, awarding a penalty against them, was confirmed, and defendants appeal. Affirmed.

See, also, 233 Fed. 430.

This is an appeal from a final order, entered February 19, 1917, adjudging the defendants, who are the appellants herein, guilty of contempt of a final decree in the suit and confirming a master's report awarding a penalty against them. The suit was begun by bill filed in the District Court on the 16th of December, 1915, to which answer was filed on January 15, 1915, and thereafter, on March 4, 1915, by consent of both parties, a decree was entered, without hearing, adjudging that the plaintiffs were the sole owners and exclusive licensees under two letters patent, the first, 1,063,533, issued on June 3, 1913, to George H. Gordon, one of the plaintiffs, and the other, 1,074,483, issued on September 30, 1913, to Mitchel Wolf and Harry Cowen, the other two of the plaintiffs. These patents were for candies of the kind generally known as "halvah," a Turkish sweetmeat originally made up of sugar and sesame oil. The first patent, which alone need be considered in this case, described the process of mixing 35 pounds of corn syrup with 15 pounds of granulated sugar and boiling the same until it became of a pasty or mushy consistency. At this stage 2 pounds of Turkish soap root were added to render the product more white and to give it greater viscosity. Next the patentee

added approximately 50 pounds of specially prepared peanut butter, and a very small quantity, say one-half a teaspoonful, of suitable flavoring essence. The peanut butter was to be made from peanuts which were roasted until free from moisture, but not so long as to change the color of the nuts, so that the oil should not be affected by excessive roasting. The result was that the peanut butter was white, and not the usual yellowish color. Of the three claims in suit only two need be mentioned:

"1. A sweetmeat consisting of about 35 per cent. corn syrup, 15 per cent. granulated sugar, 50 per cent. of a whitish peanut butter, and a flavoring essence.

"2. A bleached sweetmeat compound, composed of approximately 35 per cent. corn syrup, 15 per cent. granulated sugar, and 50 per cent. of a whitish peanut butter."

The consent decree mentioned above further adjudged that the defendants had infringed both said letters patent and concluded with an injunction against making any candy containing the inventions in question, or either of them, "or any candy or food products like or similar to those that they, or any of them, have hitherto made."

On November 8, 1915, the plaintiffs procured an order to show cause why the defendants should not be punished for contempt of this decree. In support of this order they filed affidavits setting forth the facts hitherto recited, and also showing the purchase from the defendants of certain specimens of halvah on October 22, 1915. The composition of these samples was stated in the affidavit of a chemist, one Ludwig Saarbach, as containing approximately 35 per cent. corn syrup, 15 per cent. sugar and about 50 per cent. peanut butter, with a small percentage of soap root. So far as the affidavit further stated an infringement of the second patent, it need not be recited. In further support of the motion the plaintiffs submitted an affidavit of one Johann Wind, a former employé of the defendants, who alleged that during the months of September and October, 1915, and until November 5, 1915, he had been concerned with the manufacture of the defendant's halvah. He stated the composition of the same, which was about 49 per cent. of corn syrup, 6 per cent. of granulated sugar, 42 per cent. of peanut butter, and less than 3 per cent. of corn or maize oil, with a small quantity of soap bark. He also stated that the peanut butter then used was of a whitish color, as it had only been slightly roasted.

In answer to this motion the defendants only produced the affidavit of one Claude A. O. Rosell, a chemist and patent lawyer. This affidavit contained no dispute of the facts set forth in Wind's or Saarbach's affidavits, and confined itself to a criticism of the relevancy and pertinency of the affidavits of the plaintiff. It also alleged that the defendants were manufacturing under a patent issued to him, the affiant, No. 1,154,059, on September 21, 1915, of which the application had been made five days after the consent decree here in suit. The claims of this patent were for "a food product containing maize oil, ground oleaginous seed and sweetening agent in proportions to form a solid friable compound," and the gist of the patent lay in the fact that maize oil was to be substituted in part in the manufacture of halvah for sesame oil or peanuts or other oils of the sort. The proportions, however, were not stated in the patent itself.

Upon this showing the District Court passed an interlocutory order finding the defendants in contempt for violating the provisions of the final decree of March 5, 1915, in respect of the Gordon patent, No. 1,063,533, in respect of the Wolf & Cowen patent, No. 1,074,483, and directed a reference to a special master to ascertain the amount of the candy so sold in violation of that decree and the profits obtained therefrom. 233 Fed. 430. At the hearing one of the defendants, Radutsky, testified that all the halvah made by them during the period of the accounting was composed of 50 per cent. glucose and sugar, 25 per cent. peanut butter, 18 per cent. sesame seed, and 7 per cent. maize or corn oil, and that the peanut butter was not whitish, as provided in the patent, but yellow. He further testified that all the ingredients used by the defendants were the same throughout the period of the accounting,

and that the color of the peanut butter was always the same. Thereupon the master held himself concluded by the interlocutory decree from considering whether the halvah was an infringement of the decree, upon the theory that, once the plaintiffs had shown that all the halvah was homogeneous, the matter was at an end. He found the defendant's profits to be $2,129.70, to which he added the plaintiff's charges and disbursements in the contempt proceeding of $700.92, together with a counsel fee of $750, making in all damages of $3,580.62. The District Court confirmed this finding, with modification of the amount of the counsel fee, and an order was entered on February 19, 1917, against the defendants, in the sum of $2,784.16, for which execution was directed to issue. It is from this order that the appeal was taken.

James H. Griffin and Joseph H. Robins, both of New York City, for appellants.

Paskus, Gordon & Hyman, of New York City (Maurice Block and William S. Gordon, both of New York City, of counsel), for appellees.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The first question raised is as to the propriety of a proceeding to punish for contempt, where the defendants are manufacturing under a patent of their own issued after the decree, and where the decree itself was entered by consent. We do not know the composition of the original halvah found to be within the patent on March 5, 1915, but on principle we cannot see how the fact that the defendants are manufacturing under a new patent has any bearing upon this issue. The Patent Office does not and cannot, in granting patents, regard questions of infringement; they are concerned only with conflicting claims. Were it not so, they would have to determine whether every improvement of an existing patent was or was not an infringement, which, of course, they could not do. It is undoubtedly a fact that there is much authority in the books for the proposition that the defendant's patent creates a presumption of noninfringement; but we observe that the Sixth Circuit has declined to follow the rule (General Electric Co. v. Electric Cont. & Mfg. Co., 243 Fed. 188, 193, — C. C. A. —), and certainly this is the only tenable principle, however strongly the contrary may be fixed in the books.

[1] However, we leave that question as we find it, for we do not think that in the case at bar it is necessary to pass upon it. Similarly we do not pass upon the question whether it is proper practice to proceed by contempt for a new infringement, or whether the plaintiff should apply for injunction by supplementary bill. Bonsack Machine Co. v. National Cigarette Co. (C. C.) 64 Fed. 858; Crown Cork Co. v. American Cork Specialty Co., 211 Fed. 650, 128 C. C. A. 154. We cannot approve, however, the statement in Onderdonk v. Fanning (C. C.) 2 Fed. 568, that the issue of a patent to the defendant forbids calling his product a merely colorable device. We follow rather the practice laid down by the First Circuit in National Metal Molding Co. v. Tubular Woven Fabric Co., 239 Fed. 907, 153 C. C. A. 35, and approved in our recent decision, Charles Green Co. v. Henry P. Adams Co., 247 Fed. 485, — C. C. A. —, decided November 14, 1917, that in cases of a colorable evasion of the decree the District Court had the

discretion either to proceed by supplementary bill or to proceed direct·· ly under petition in contempt. The language in Truax v. Detweiler (C. C.) 46 Fed. 117, is to be taken with that exception implied, as appears expressly in the decision of Judge Lowell in Higby v. Columbia Rubber Co. (C. C.) 18 Fed. 601, 602. Nor do we distinguish even when the decree is by consent, else such decrees would be mere nullities.

[2] We think, on the showing made before the District Judge, the change in the product was only for evasion, and fell within the exception to the general rule just stated. Saarbach's affidavit stated the approximate proportions as he found them from the samples; they were the same as those of the claims. Wind's more specific affidavit showed that the composition of all the halvah made was substantially like that of the Gordon patent, except for the admixture of less than 3 per cent. of corn oil. The proportions in the plaintiff's patent were expressly stated to be only approximate, and the addition of so trifling an amount of corn oil could not have been for any honest reason. We therefore find that the interlocutory order of the District Judge was authorized, and indeed we do not see how he could have found otherwise than he did.

[3] A different question would be raised by Radutsky's testimony, on the hearing before the master, of the composition of the halvah made during the summer and autumn of 1915, and if that testimony was relevant to the issue we should be disposed to leave the plaintiff to proceed by supplementary bill. But we do not think that it should have been considered, and we agree with the master in holding that, once the plaintiffs had shown, as they did, that all the halvah made during the period of the accounting was like the samples, it had proved its case as to the whole amount, and that the controversy was closed. The defendants had had their day in court, and had declined to contest the facts; if they had subsequently wished to do so, their only course was to ask to reopen the proceedings before the court, so as to meet the plaintiff's proof. This they chose not to do, and the decision stood as to the samples. Unless they could, before the master, dispute the plaintiffs' proof of the homogeneity of the halvah as a whole, it necessarily followed that they were accountable for all the profits. We cannot agree that, after the decision of the court upon the issue at that time before it, the whole evidence came again into hotchpot on motion to confirm the report. Hence we hold that all the halvah was within the decree.

[4, 5] There remains only the items of the accounting. Prima facie we agree that the item for depreciation was a correct credit to the defendants, had it been properly proved. We can find no proof of it, however, in the case, except the testimony of Radutsky, in answer to Q. 339, that the item appearing in the account "was for depreciation and discarded machinery, and the machinery was also used in manufacturing tachin oil and sesame seed." If the credit was challenged, the defendant had the burden of establishing it, and we do not think that this testimony was sufficient. There should have been some indication of what was the average life of the machinery, from which it might have been ascertained what the yearly depreciation would have been,

and from this yearly depreciation could have been ascertained the depreciation during the period of the accounting. The testimony is no more than a mere statement of the nature of the claim itself. We think the master was right in disregarding it.

[6] We do not, however, assent to the disallowance of three-fourths of the advertising charge of $312.20. We think it should be allowed at $234.15. The advertising of a business is a necessary expense, and, unless something to the contrary appears, must be reasonably regarded as one of the means by which the profits arise. There is no reason to distinguish between it and any other expense by which sales are made, such as salesmen's commissions, or salaries, or the like.

[7] There is undoubtedly authority for the position taken by the master and the court below that taxes and insurance are not a proper credit in accounts of this sort. Winchester Repeating Arms Co. v. American Buckle & Cartridge Co. (C. C.) 62 Fed. 278, 281; National Folding Box & Paper Co. v. Dayton Paper Novelty Co. (C. C.) 95 Fed. 991; Steam Cutter Co. v. Windsor, etc., 22 Fed. Cas. 1166, Fed. Cas. No. 13,332. There are often difficulties in apportioning such items as these to the profits for a particular part of the business in question, but here the manufacture of the halvah constituted three-fourths of the whole business of the company, and we see no reason why we should not apply the rule laid down by the Court of Appeals for the Third Circuit in Carborundum v. Electric Smelting, etc., 203 Fed. 976, 985, 122 C. C. A. 276, that they are proper credits. It is true that in that case the plaintiff was entitled to all the profits of the defendant's business realized during the accounting period, but there surely can be no difference in principle between a case where the plaintiff is entitled to all the profits and to an aliquot part. General charges of the character of insurance and taxes can only be apportioned upon that part of the profits which the infringing device affects; but, when this can be accurately done, it is in accordance with equity and good sense that the defendant should get credit for what was a necessary condition to the creation of profits at all. We therefore allow a credit of three-fourths of this sum, amounting to $268.14.

[8] As to the item of $93, for a copy of the stenographic minutes, our decision in Stallo v. Wagner, 245 Fed. 636, —— C. C. A. ——, applies only to such items when an attempt is made to tax them as part of the costs; but this is a proceeding for contempt, and, while we have no power to impose a penalty, we do have power to make the plaintiff whole for all reasonable expense to which he may have been put, including a counsel fee. As we regard the charge for copies of stenographer's minutes as a reasonable disbursement, we deem it just that the plaintiff should be made whole for that expense, even though he could not have taxed it in his bill of costs.

With the modifications above indicated, the decree is affirmed, without costs.