METALLIC RUBBER TIRE CO. v. HARTFORD RUBBER WORKS CO.

(Circuit Court, D. Connecticut. July 27, 1911.)

No. 1,261.

PATENTS (§ 328*)—INFRINGEMENT—VEHICLE TIRE.
　　The Adams patent, No. 609,320, for a vehicle tire, construed and *held* not infringed.

In Equity. Suit by the Metallic Rubber Tire Company against the Hartford Rubber Works Company. On final hearing. Decree for defendant.

Alfred Wilkinson and John H. Roney, for complainant.
Ernest Hopkinson and Edward W. Vaill, for defendant.

PLATT, District Judge. This is the usual bill in equity, asking for injunction and accounting, based upon letters patent to Calvin T. Adams, No. 609,320, issued August 16, 1898, for a vehicle tire.

The defenses are invalidity, irregularity of issue, noninfringement, and lack of equity.

The first thing to settle is what the inventive concept of Adams was, and what he claimed under it. In discussing that we must not forget that the Adams' concept was formed in 1895 when the bicycle was in vogue and the heavy motor car of to-day was a vague uncertainty. His mind was concerned with bicycles alone, and nothing else, except possibly tires of a similar character. We must go to the file wrapper to learn what he did. He wanted to show how the tires of bicycles and "other wheeled vehicles" (in which latter phrase he undoubtedly had in mind carriage wheels) could be so treated as to retain their resiliency, and at the same time be prevented from slipping on smooth and wet roadways. The yielding tires of bicycles had up to that time, he says, been provided with spikes extending well beyond the head, so as to penetrate and give a locking hold upon ice, but these could not be used on roadways without destroying the tire or making it hard work to propel the machine. Such tires had also been provided with external metallic fittings to bear on the ground when the tire is compressed, but such fittings were too heavy, expensive, and complicated. His idea was to provide a tread for the yielding tire which would not add much to the weight or expense of the tire, could be easily applied, would last, would not slip on smooth or wet roadways, and would not "materially increase the labor of propulsion." His way of doing it was to weave into the yielding material of the tread wire which should appear every now and then flush with the surface, and at other points be embedded within the material of the tread, or to embed within the material of the treads studs of metal or other hard substance which should come up flush with the surface. In this way he expected that the metal would get a grip on the roadway and prevent slipping, but at the same time the tread and metal would readily yield with the tire and permit the flexible material of the tread to act as a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cushion. He then proceeded to tell people how to carry his idea into practice. He made pictures of pneumatic bicycle tires embodying his invention, both on the surface and in cross-sections.

His cross-section (Fig. 2) shows the hard bearings $C$ $C$ $C$ made by weaving or stitching metallic wire through the tread in lines running lengthwise of the tread (as shown in Fig. 1), so that the wire is alternately flush with the surface and embedded within the material of the tread. He then explains that the wire being interwoven with the material of the tread will remain securely therein after the exposed portion has worn off, and that the exposed ends will then act in the same way as the hard bearings. This is the nearest he comes to the idea of "cat's claws." He appears to have thought that some virtue would be left in his hard bearings, even after they were worn apart, but that was an incidental, and not a substantive, thought. In his cross-section (Fig. 3) he shows his hard bearings made by sticking metal studs into the yielding material of the tread, so that their heads would come flush with the roadway and act like the exposed portions of the metal wire in Fig. 2. (That hard bearing would, of course, always be ready for work, no matter how much the material of the tread should wear away, and he would not have to face the possibility of loose ends dangling about, which was very likely a comfort to his mind.)

He then makes three claims based upon what he thought he had invented:

(1) "A yielding tread for a vehicle tire, having a peripheral succession of hard bearings embedded in the material of which the tread is composed and substantially flush with it's surface."

(2) "A vehicle tire treated in the same way, without a tread." (Both of these claims count, of course, upon the metal studs, and are put first, although the specifications treat the subject in the reverse order.)

(3) "A yielding tread for a vehicle tire, having metallic wire interwoven with the material of which the tread is composed so as to lie in part substantially flush with its surface."

There is nothing in the claim, it will be observed, covering the function of that portion of the wire lying flush with the surface after it has been worn away so as to leave exposed ends held in place by that portion of the woven wire which remains countersunk in the material of the tread. These claims were rejected by the examiner on a number of citations, and in December, 1895, Mr. Adams absolutely cut out any claim to his invention as respects the wire interwoven with the tread, and proceeded with his metal stud idea, in one way and another. By various citations the examiner brought Mr. Adams to such a frame of mind that on January 5, 1897, he abandoned his metal stud idea and any broad claim covering the "interwoven wire form of bearings," and limited his application "to the combination with the cushioned tire of the interwoven wire bearing tread."

It is argued by defendant that Adams presented this idea to the public when he cut it out of his claims, and devoted himself to the metal stud proposition. This is more or less persuasive, dependent upon the angle from which one views it, but I do not think the rights of the

parties should turn upon that consideration. We are still hunting for the breadth and scope of the mental concept which pervaded Dr. Adams' mind. At this last moment he is still thinking and arguing about his wire as being interwoven with the material of the tread, and in the new claim which he prepares and inserts he does not suggest the functional advantages which will accrue to his idea after the exposed portion of the interwoven wire has been worn through by frictional contact with the roadway. He was thinking about bicycle tires, and, if he had looked into the art at all, he must have found that others before him had conceived the idea of stitching wire into a bicycle tire. Others had done it for other purposes, mainly to stiffen and strengthen their tires. It is not surprising that he should have thought that he could adapt their idea to his own use. (See Phillips' British Patent, 10,145, of 1893, and Barker's British Patent, No. 1952, of 1888.) That he could weave in his wire and make it useful to prevent slipping was the thought which came to him, and he proceeded to develop that thought in conformity with our statutes relating to patent discoveries. Assuming his idea to have been what I am confident it was, he complied with the statutes. Assuming it to have been what the plaintiff insists that it was, he failed completely to comply with them. If one follows his disclosures, he could not get the wire into the tread in any other way than by weaving or stitching. There is not the faintest allusion to such a manner of treatment as the defendant applies to its coiled wire. It is an easy thing to take such a structure as defendant's tire, made under the Midgley idea, and reason backwards to the Adams idea. By the time one reaches the Adams idea it has a very different aspect from the one reached by beginning with the art as it existed when Adams came into view, and working up to Adams through the light thus presented.

This memorandum is the outcome of many hours of careful thought and study of the case from every viewpoint. It would be a pleasant task to jot down my notions as they have come to me during those hours, but time forbids and no useful purpose would be gained thereby. In the light of the facts presented by the use of the heavy tires which must be applied to the ponderous motor car of the present day, a vastly different problem is presented from the one which Adams encountered from 1895 to 1898. It would be absurd, as well as highly inequitable, to so enlarge the scope of the answer which he made to his problem that it would enable him to levy tribute upon those who have faced with courage a problem vastly larger. He certainly failed completely to teach any one how to solve the larger problem, and for that reason alone, no matter what was in his mind, he failed to perform that end of his bargain which he was obliged to perform before he could expect the right of monopoly to which a properly prepared application, disclosure, and claim would have entitled him.

Construing the patent as I feel bound to do, the defendant does not infringe.

Let the bill be dismissed, with costs.