OEHRING et al. v. WILLIAM GARDAM & SON.

(Circuit Court, S. D. New York.  April 30, 1910.  On Rehearing, July 27, 1910.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MULTIPLE DRILL.
    The Oehring patent, No. 560,171, for a multiple drill, claim 3 was not anticipated, and discloses patentable invention in the element of the two-part bracket-support for each drill-carrying spindle.  The remaining claims are void for anticipation.  Claim 3 also *held* infringed.

In Equity.  Suit by August J. Oehring and the Pratt & Whitney Company against William Gardam & Son.  Decree for complainants.

Poole & Brown and Briesen & Knauth (Arthur v. Briesen and C. Clarence Poole, of counsel), for complainants.

Philipp, Sawyer, Rice & Kennedy (M. B. Philipp and James Q. Rice, of counsel), for defendant.

HAZEL, District Judge.  This suit was brought to restrain the infringement of United States letters patent No. 560,171, dated May 12, 1896, issued to complainants for an improvement in a multiple drill. The object of the invention was to provide a machine of the multiple drill type to enable drilling simultaneously a plurality of holes of varying depth arranged in a horizontal, vertical, or curved line or in a circle.  To accomplish this, it was necessary to provide means to enable lateral or axial adjustability of the drill spindles, and to regulate the depth of the holes to be drilled.  Machines having single drills or a series of rigid drills for drilling in hard rubber, wood, and metals were old at the date of the patent in suit.  To operate multiple drills, a movable table was necessary in one type of drill and in another the drills were so arranged and affixed to the spindle head as to enable vertical adjustment only.  The proofs show that there were other multiple drills which were used for a particular class of workmanship, but they were costly and limited in their field of operation. Indeed, such drills were not adapted to perform the functions of the Oehring drilling machine, which concededly is capable of doing the work of the first-mentioned machines and those of special construction. The machines of the prior art were so constructed that in operation the table attachment received the thrust of the drill as it came in contact with the drilled material, while in the patent in suit a table support for the drill is not used.  In its place the patentee adopted a rigid frame and pivoted a series of sliding brackets in the interior thereof, each bracket being constructed to hold a drill and capable of sliding or moving to a desired direction.  The brackets are normally in a horizontal position, and include in their construction a vertical auxiliary bracket which is movable and designed to receive the strain or thrust of the drill at its lower end, and, in addition thereto, it permits raising and lowering the drill to facilitate drilling in uneven material or holes of varying depth.

The defendant, while admitting that the earlier multiple drills do not precisely disclose the complainants' structure, insists that they point out

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the way to the skilled mechanic for adapting the elements employed by the patentee to produce results of the kind described in the evidence. The drilling machine used since 1887 in the factory of Gardner Governor Company, the defendant's closest reference, has received my careful attention. It has four adjustable drills capable of simultaneous use in metals or wood, and concededly it is capable of drilling holes of varying depths and at varying positions within the field of the slot through which the drills project. The spindles to which the drills are attached are driven by a telescopic shaft, and the drill can only be operated obliquely with the slotted opening in the frame or table. Prior to the patent in suit, it was the custom to pivotally mount drills in a slotted bracket so as to enable sliding them in any desired direction. The patent to Hunter, No. 101,466, April 5, 1870, shows a bracket in combination with a drill which may be adjusted in various directions within the pivotal range of the bracket, and in the patents to Lauback, No. 41,516, of 1864, and No. 46,478, of 1865, and to Cottrell, No. 144,745, of 1873, similar structures are shown with flexible driving shafts. The expert witness, Freeman, for the defendant, supplementing the exhibit patents of the prior art and the Gardner machine, testified that in his opinion the patentee merely adapted old and well-known mechanical expedients to enlarge the range of adjustment of the drill spindle carrying bracket. In this view I think he is right except as to the element of the two-part bracket-support contained in claim 3. Claim 3 reads as follows:

"3. In a multiple drill, the combination with the drill-carrying spindles and their flexible driving-shafts, of a frame and a two-part bracket-support for each spindle, one member of which is horizontally adjustable on the frame, and the other member of which is vertically adjustable on said first-mentioned member and carries the spindle, substantially as set forth."

The elements of said claim, as has been indicated, except the two-part bracket-support, were old and are disclosed in the patents hereinbefore mentioned. The open frame of the Oehring patent upon which the brackets are adjustably fastened is sufficiently indicated by the Morgan patent, No. 238,244, and the Woodcock & Gwyn machine, to deprive the patentee's frame construction of novelty. The alteration or improvement made by the patentee principally exists in the fact that he has abandoned the table or plate which in prior structures received the drill in its downward motion, and in its place he uses an open frame in which the drills are contained and extends such drills through the slides in the movable brackets. To enable such brackets to resist the upward thrust of the drill, he constructed at the front end of the horizontal bracket where the spindle is held in place an auxiliary bracket which performs the double function of receiving the thrust at its bottom, and also enables adjusting the height of the drill point. This improvement, though narrow and limited, nevertheless was an advance in the art of sufficient importance to entitle the patentee to a construction of the claim broad enough to include a feature which manifestly operates to perform the function of the Oehring drill.

Does the defendant's machine infringe the patent in suit? All the elements of claim 3 are embodied in defendant's structure including the two-part bracket-support for each spindle. The bracket hold-

ing the drilling spindle is attached horizontally to the inner side of the open frame as in complainant's structure by a screw or bolt. The drill spindle supporting bracket has a vertical adjustment on the front end thereof which is constructed in two parts, and in such a manner as to enable positioning the drill spindle in relation to the open frame at different heights. By this construction defendant's bracket receives the thrust in the upward and downward movements of the drill as in that of complainants, and, even though its vertical adjustment is slight, in operation the drill is capable of performing all the functions of the Oehring drill.

The defense of laches has been considered, and is thought insufficient. Complainant may have a decree and accounting for infringement of claim 3. The other claims in issue are thought anticipated by the patents hereinbefore mentioned and the Gardner Governor Company machine.

## On Rehearing.

Application for rehearing on newly discovered evidence is granted on condition that the defendant pay the entire expense of taking and transcribing such testimony, which shall solely relate to the Dwight drilling machine, and pay complainant's counsel $100 to defray his traveling expenses for attending the taking of such testimony in appearing on this motion. Testimony to be taken within 30 days unless otherwise stipulated by parties in interest.

So ordered.