OEHRING et al. v. WILLIAM GARDAM & SON.

(Circuit Court of Appeals, Second Circuit. January 13, 1913. On Petition for Rehearing, January 24, 1913. On Rehearing, February 10, 1913.)

No. 111.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MULTIPLE DRILL.

The Oehring patent, No. 560,171, for a multiple drill, consisting of a machine by which a plurality of holes arranged at regular or irregular intervals and extending to various depths may be simultaneously drilled, claim 1, was not anticipated, and discloses patentable invention, in that the bracket supports for the drill carrying spindles are "independently adjustable in all directions," a combination not found in the prior art. Claim 3 also *held* valid, and both said claims infringed.

Appeal from the District Court of the United States for the Southern District of New York; John R. Hazel, Judge.

Suit in equity by August J. Oehring and the Pratt & Whitney Company against William Gardam & Son. From that part of the decree finding certain claims of the patent in suit invalid, complainants appeal. Reversed.

For opinion below, see 180 Fed. 476.

The decree of the District Court, Southern District of New York, dismissed the bill with respect to claims 1, 2, 7, 10 and 11 in a suit to restrain the alleged infringement of letters patent No. 560,171 issued on May 12, 1896, to the complainant Oehring for an improvement in multiple drills.[1] The complainant corporation is an assignee under the patent.

A. v. Briesen and T. E. Brown, Jr., both of New York City, for appellants.

J. Q. Rice and M. B. Philipp, both of New York City, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The patent itself at its commencement clearly discloses its subject-matter:

"This invention relates to multiple drills, and has for its object to provide a machine by means of which a plurality of holes arranged at regular or irregular intervals and extending to various depths may be simultaneously drilled."

---

*For other cases see same·topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The decree finds claim 3 of the patent valid and infringed but the defendant does not appeal.

Several claims are in issue but as the complainant will obtain sufficient relief if the first claim be found valid and infringed, we may confine our examination to that. This claim reads as follows:

"In a multiple drill, the combination, with the drill carrying spindles, and flexible shafts for driving the same, of a frame arranged in a plane at right angles to the axes of the spindles, and bracket supports for the said spindles, connected with said frame and independently adjustable in all directions in the plane of the same, substantially as described."

The claim, then, covers a drilling machine whereby a multiplicity of holes may be drilled simultaneously and according to any desired arrangement, regular or irregular. But as showing merely a multiple drill, nothing new is disclosed. Multiple drills of various kinds were old in the art. Whatever novelty is to be found in the claim is to be looked for in the words "independently adjustable in all directions." The claim is valid, if at all, because the multiple drill which it shows has

(1) *Independent* adjustability;

(2) *Universal* adjustability.

Independent adjustability as we now use the phrase is the capacity of adjusting the drill spindles in a desired arrangement without the aid of an additional perforated pattern plate or "jig" to guide them.[2] This independence is found to some extent in the prior art. Thus for example the Morgan patent shows a multiple drill machine in which the drill spindles may be adjusted and different arrangements made without the aid of a pattern plate. But the field of arrangement is very limited. The holes must be drilled either in a straight, slightly curved or zigzag line. The drill carriers can be moved only so far as is permitted by the connecting links and are held in the same relation to them. In this as in the other patents and uses of the prior art, independent adjustability does not go with universal adjustability in a substantial field.

Universal adjustability in multiple drills is to be found in the prior art. Thus the Woodcock and Gwyn English patent permits every adjustment in a substantial field but a pattern plate is provided to guide the drills. There is no capacity for adjusting the drills by themselves —for independent adjustment. So other patents and uses disclose universal adjustability but do not disclose it in combination with independent adjustability.

Probably the nearest approach to the patent is the Gardner machine but if the slotted plate of that machine can be said to permit independent adjustment, it does not permit universal adjustment. The slots permit only a limited radial adjustment. The Gardner machine cannot be said to be "independently adjustable in all directions."

Going over the prior art with care, the two things, capacity for uni-

[2] The words "independently adjustable" in the claim undoubtedly mean primarily that the drills may be individually adjusted. But the claim, in connection with the specification, makes capacity for independent adjustment as defined in the text, an element, and the phrase "independent adjustability" is used as a convenient expression of the idea involved in connection with the phrase "universal adjustability."

versal adjustment and capacity for independent adjustment will not be found together. Those patents and uses in the prior art which show capacity for universal adjustment do not show capacity for independent adjustment and we are not convinced that it would be merely a matter of shop practice to make a drill which is adjustable by a pattern plate as in the English patent referred to independently adjustable. So those uses which show a capacity for independent adjustment do not show with it a capacity for universal adjustment. It is not altogether apparent that mere mechanical skill would suffice to remove the slots of the Gardner machine and substitute the field of the patent.

To sum up the situation: It does not appear that any one before Oehring made the combination of the claim and it does appear that his structure supplanted the earlier drills and made a real advance in the art. Taking this into consideration we think that invention should be said to exist in the first claim and that it should be sustained. We also think it very clear that this claim has been infringed by the defendant. We do not think the defense of laches established.

The decree appealed from is reversed with costs and the cause remanded with instructions to enter the usual decree for the complainant upon claim 1 of the patent.[3]

### On Petition for Rehearing.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. The petition for rehearing is granted with respect to the question whether the complainants have waived or have lost by laches the right to an accounting and with respect to costs.

Oral argument is not required, but the case may be considered as resubmitted on printed briefs to be filed within two weeks.

### On Rehearing.

After carefully considering the briefs submitted, we adhere to the the conclusion stated in the opinion that the defense of laches was not established either as a bar to an injunction or an accounting. We think that the complainants by waiving an accounting upon the narrow claim did not waive it upon the broad one, and, under all the circumstances, that the delay in bringing this suit after the notice to the defendants was not inexcusable. The complainants were prosecuting another infringer, and the defendants were hardly misled.

The complainants are entitled to the costs of the appeal and in the lower court. This is not a case where the complainants have prevailed on certain claims and the defendants on others. We held that the broadest claim in question was valid and infringed, and, as that would give the complainants adequate relief, we thought it unnecessary to consider the narrower claims.

The opinion of the court as rendered will stand without modification.

[3] Assuming that we may review upon this appeal that part of the decree which finds for the complainant on claim 3 of the patent, we see no reason to differ from the conclusions reached by Judge Hazel.