OEHRING et al. v. FOX TYPEWRITER CO.

(Circuit Court of Appeals, Second Circuit. April 1, 1918.)

No. 179.

1. PATENTS ⬡⟿328—VALIDITY—INVENTION.
   The Oehring patent, No. 560,171, for multiple drills, *held* valid and infringed.

2. PATENTS ⬡⟿318(4)—INFRINGEMENT—PROFITS—APPORTIONMENT.
   Where complainant's invention represented an entire revision of a machine and the creation of a new device in which all of the operative parts contributed to produce a new result, complainant may recover for defendant's infringement profits from the entire machine without any apportionment; it being impossible for defendant to prove what the old element, if any, contributed to the profits.

3. PATENTS ⬡⟿318(6)—INFRINGEMENT—DAMAGES—CREDIT.
   When the amount of capital used by an infringer for the manufacture of infringing devices is ascertained, interest is a proper credit to be allowed in computing the recovery by the owner of the patent.

4. PATENTS ⬡⟿318(6)—INFRINGEMENT—DAMAGES—CREDIT.
   Though defendant used an old plant and facilities which had theretofore been devoted to other business for the manufacture of the infringing device, a credit for interest on the capital invested cannot be denied because the plant was not constructed for the manufacture of the infringing device.

5. APPEAL AND ERROR ⬡⟿731(4)—PATENTS ⬡⟿322—REFERENCE—EXCEPTIONS TO REPORT—ASSIGNMENT OF ERROR.
   Where a suit for the infringement of a patent was referred and the master worked out a difficult apportionment, any error as to details should be pointed out in the exceptions to his report and in the assignments of error to the decree.

6. PATENTS ⬡⟿318(6)—INFRINGEMENT—ALLOWANCES.
   In a suit for patent infringement, defendant, the manufacturer of the infringing devices, is entitled to allowances for taxes and insurance when properly apportioned to that device.

7. PATENTS ⬡⟿318(5)—INFRINGEMENT—INTEREST ON PROFITS.
   Where it does not appear that the infringement was wanton or deliberate, the owner of the patent is not entitled to interest on the profits from the date when they were actually made, but only from the date of the master's report ascertaining the same.

8. PATENTS ⬡⟿318(5)—INFRINGEMENT—WILLFUL INFRINGEMENT.
   Where at the time of defendant's infringement the validity of the patent was in serious controversy and a District Court had held it invalid, the infringement cannot be deemed wanton and deliberate so as to justify the allowance of interest on profits from the date when they were made.

9. PATENTS ⬡⟿318(6)—INFRINGEMENT—EXPENSES OF SALESMEN.
   In a suit for patent infringement where it appears that defendant's expense for salesmen was abnormal and was incurred in an effort to build up good will for the infringing article, the patent being about to expire, defendant is not entitled to a full allowance for the expense of salesmen, but only to an equitable percentage of such expense.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by August J. Oehring and the Pratt & Whitney Company against the Fox Typewriter Company. From a decree for complainants for part of the relief sought, defendant appeals, and complainants cross-appeal. Modified and affirmed.

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from final decree dated November 28, 1916, awarding to plaintiff $11,053.35 profits made by defendant by its infringement of United States letters patent No. 560,171 of May 12, 1896. The interlocutory decree held claim 1 valid. Claim 3 was included in the accounting; but, as claim 1 was comprehensive of claim 3, the only question in that regard is as to costs.

The memorandum of the District Court, adverted to, is as follows:

The only question in these cases is whether any new facts have been shown the court requiring a conclusion different from that reached in respect of this same patent in the action against Gardam & Sons reported 202 Fed. 753, 121 C. C. A. 119.

The attention of this court is directed to two new matters, and two only: (1) The file wrapper relating to the patent in suit; and (2) the Adt machine of 1879, illustrated in defendant's Exhibit H.

In the file wrapper Oehring replied to certain comments of the examiner by saying: "While the drawings of this application may not clearly exhibit specific mechanism for adjusting the drill-carrying spindles in all directions, to wit, in an 'inclined direction,' nevertheless in view of the principle of operation shown and described and of the specific claim that the adjustment is in all directions, any slight change of construction whereby an inclined direction would be given to the drill-carrying spindles would be purely a matter of mechanics, coming within the skill of the ordinary mechanic, and would manifestly be an obvious modification of the invention."

I fail to see that this quotation means more than that Oehring asserted (as he always has) that the adjustment of spindles in all directions would include an inclined direction. This is obviously true; but it is a wholly different thing to argue that, because it is easy to include an inclined direction in all directions, it would not amount to invention to change a machine capable of adjusting spindles in an inclined direction to one adjusting in all directions.

The Adt machine is to me interesting because it shows what mechanics and inventors wanted and waited a long time to get.

Obviously in any nice work almost all of the holes to be drilled should be drilled by a perpendicular instrument. Unless the drill is moved, or the thing to be drilled is moved every time a hole is required, this perpendicularity will not be maintained unless some kind of flexible shafting be introduced. But the moment this is done the thrust has to be taken care of. Oehring took care of the thrust by taking it up on the bracket, and this is what enabled him to use a flexible shaft.

Adt has no flexible shaft, and it is in my opinion abundantly proven that the thrust was taken up at the ceiling or top of the machine. In order to make the Adt machine an anticipation the thrust must be transferred to the bracket, something which Adt never intended.

By the insertion of a universal joint in the shaft of Exhibit H, the limitations of the real Adt machine are in my judgment clearly shown. Unless a bracket be clamped to a standard, the shaft with the flexible joint is inoperative; if it be clamped to a standard, it is not the Adt machine.

Let it be admitted that, if the Adt machine be modified by transferring the thrust from the ceiling bracket and inserting a flexible shaft or universal joint above the new point of thrust reception, Oehring's invention would be substantially shown. It may be so, but if it be so the steps taken constitute invention of quite a high kind.

Complainants may take a decree as prayed for, with costs.

Fred L. Chappell and Chappell & Earl, all of Kalamazoo, Mich., and Philipp, Sawyer, Rice & Kennedy, of New York City, for appellant and cross-appellee.

Hans v. Briesen and Fred A. Klein, both of New York City, for appellees and cross-appellants.

Before WARD, Circuit Judge, and LEARNED HAND and MAYER, District Judges.

MAYER, District Judge.   [1] 1. The patent in suit covering an invention of substantial merit was broadly sustained in Oehring v. Gardam, 202 Fed. 753, 121 C. C. A. 119.   In the case at bar only two matters were introduced which had not appeared in the Gardam Case, viz.: (a) The Adt machine of 1879, and (b) the file wrapper.   As the patent in suit has expired and the patent features of the case can be of interest only to the parties, a discussion of the two new matters supra is unnecessary.

We agree with the District Court for the reasons clearly and concisely stated in the memorandum opinion below, that there is nothing in the Adt machine nor the file wrapper which affects the conclusion in the Gardam Case.   Indeed, we are inclined to the view that the Gardam machine in the Gardam suit was a nearer approach to the invention than the Adt machine and we are satisfied that the patent was valid and infringed.

In the accounting, however, several interesting questions were raised which invite careful consideration, the more important of which were as follows:   (1) Whether profits from the entire machine were recoverable or should have been apportioned;   (2) whether interest on investment should have been credited to defendant as part of the cost of the infringing machines;   (3) whether plaintiffs are entitled to interest on profits from the date when such profits were actually made by defendant;   and (4) whether a credit should be allowed to defendant for 90 per cent. of defendant's salesmen's expenses.   Other questions in the accounting will be referred to where necessary.

[2] 2. The structure of the patent was unitary.   The novelty was the combination of universal with independent adjustability.   Oehring v. Gardam, supra.   No other single machine has thus far taken its place and there is no standard of comparison with any other machine. The only comparison, if any, is as between Oehring and a series of separate drills each adapted only for a restricted line of work.   The invention does not belong to the class considered in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, or Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398. The Oehring invention represented an entire revision of the entire machine and the creation of a new device in which all the operative parts contributed to produce the new result.

In the state of the evidence, it was incumbent on defendant, in any event, to prove what old element, if any, contributed to the profits, and this, of course, it was unable to do.

We therefore agree with the District Court that the case was not one for apportionment.   Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987;   Carborundum Co. v. Electric Smelting & Aluminum Co., 203 Fed. 976, 980, 122 C. C. A. 276;   Orr & Lockett Hardware Co. v. Murray, 163 Fed. 54, 89 C. C. A. 492.

[3-5] 3. Interest on investment:   When the amount of capital used by an infringer for the manufacture of the infringing devices is once

ascertained, interest is a proper credit. Western Glass Co. v. Schmertz Wire Glass Co., 226 Fed. 730, 141 C. C. A. 486.

The case just cited reviews this subject comprehensively and historically and announces a rule which accords with business practice and common sense. Certainly, a merchant cannot correctly determine what his profit is until he knows the amount of his investment together with interest thereon, whether the investment is made out of his own funds or borrowed capital.

It is argued in the case at bar that interest on investment should not be allowed because defendant used for the infringing business an old plant and facilities which had theretofore been devoted to other business but there is no merit in this contention. If a plant once used to manufacture the machine A ceases that manufacture and engages in manufacturing the infringing machine B, we are at a loss to understand why the plant is any less an investment for the manufacture of B than if a new plant were purchased for such manufacture. If the plant, theretofore used solely to manufacture A, is used partly to manufacture A and partly B, then the sole problem is to ascertain what proportion is devoted to the manufacture of B, or, in other words, to work out the correct apportionment.

The plaintiffs assign as error that:

"The alleged interest on investment was not interest on investment at all, but was interest on inventory and property only, and that interest on inventory so calculated was not a proper charge."

The items which constitute the investment in the case at bar are (broadly classified) land, buildings, machinery, fixtures, light and power plant, accounts, and bills receivable. These all go to make up the capital which defendant had invested in the various departments of its business and, while a list of these items may be called an inventory, that inventory shows the investment. Plaintiff's brief refers to some items in detail, but an appellate court cannot undertake to examine the correctness of the constituent items entering into the final calculation as found by the trial court, where error is not assigned. In this case, the master submitted a draft report to counsel, then passed on the exceptions to the draft report, then filed his final report, which in due course came before the District Court on exceptions. Plaintiffs filed three exceptions to the final report on broad general propositions, i. e.: (1) To the allowance to defendant of interest on investment; (2) to the failure to allow plaintiff interest on profits made by the defendant for each fiscal year of the infringement; and (3) to the failure to find that the infringement was willful, deliberate, and intentional. So far as the record discloses, the detailed items of the investment account were not attacked by plaintiffs, and, in any event, plaintiffs assigned only three errors substantially similar to their three exceptions to the master's report. The master's report dealt painstakingly with a mass of figures, schedules, and detail and worked out a difficult apportionment. If error as to details was committed (and we do not hold there was), it should have been pointed out in the exceptions to the master's report and in the assignments of error.

[6] Defendant, however, duly excepted to the master's final report

and duly assigned as error the failure to allow insurance and taxes in favor of defendant when properly apportioned. Since the decree below was filed, taxes and insurance have been held by this court to be proper credits (Gordon v. Turco-Halvah Co., Inc., 247 Fed. 487), and these items, properly apportioned, should have been allowed.

[7] 4. Interest on profits: The final decree allowed, in favor of plaintiffs, interest on defendant's profits from the date of the master's report. Illinois Central R. Co. v. Turrill, 110 U. S. 301, 303, 4 Sup. Ct. 5, 28 L. Ed. 154; Tilghman v. Proctor, 125 U. S. 136, 160, 8 Sup. Ct. 894, 31 L. Ed. 664; Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 457, 12 Sup. Ct. 49, 35 L. Ed. 809.

Plaintiffs contend, in effect, that interest should be allowed from the date when profits were actually made by defendant.

The question of the allowance of interest in certain classes of cases has been in evolution. Faber v. City of New York, 222 N. Y. 255, 262, 118 N. E. 609; Robinson v. United States, 251 Fed. 461, —— C. C. A. —— (recently decided).

In a case such as that at bar, however, we are bound by the rule as settled by controlling authority and as was recognized by Judge Taft in National Folding-Box & Paper Co. v. Dayton Paper-Novelty Co. (C. C.) 97 Fed. 331.

In Mowry v. Whitney, 14 Wall. 653, 20 L. Ed. 860, interest was not allowed prior to the final decree, although the court stated, "We will not say that in no possible case can interest be allowed."

In Littlefield v. Perry, 21 Wall. 205, 229, 22 L. Ed. 577, Mowry v. Whitney, supra, was followed with the observation that:

"Circumstances may, however, arise which would justify the addition of interest in order to give complete indemnity for losses sustained by willful infringements."

In Illinois Central R. Co. v. Turrill, supra, followed by Tilghman v. Proctor, supra, interest was allowed from the date of the master's report and that is now the rule, otherwise unchanged and applied as recently as Western Glass Co. v. Schmertz Wire Glass Co., supra; for as said in Tilghman v. Proctor, supra, at page 160 of 125 U. S., at page 907 of 8 Sup. Ct., 31 L. Ed. 664:

"If the question thus presented were a new one, it would require grave consideration. But by a uniform current of decisions of this court, beginning 30 years ago, the profits allowed in equity, for the injury that a patentee has sustained by the infringement of his patent, have been considered as a measure of unliquidated damages, which, as a general rule, and in the absence of special circumstances, do not bear interest until after their amount has been judicially ascertained; and the provision introduced in the patent act of 1870, regulating the subject of profits and damages, made no mention of interest, and has not been understood to affect the rule as previously announced."

It is, perhaps, to be inferred from Mowry v. Whitney, Littlefield v. Perry, and Tilghman v. Proctor that interest from a date earlier than the master's report might be allowed when the infringement is proved to be wanton and deliberate.

[8] In the case at bar there were some features indicating a deliberate purpose to infringe, but, "at the time of the infringement, the fun-

damental questions and validity of" Oehring's patent "were in earnest controversy and of uncertain issue" (Tilghman v. Proctor, supra), as is shown by the fact that the Circuit Court, on July 27, 1910, in Oehring v. Gardam, 180 Fed. 476, held the broad and important claim 1 invalid, and that it was valid was not finally decided by the Circuit Court of Appeals until February 10, 1913 (Oehring v. Gardam, 202 Fed. 753, 121 C. C. A. 119), shortly before the expiration of the patent on May 12, 1913. Therefore we cannot say that the infringement was wanton, and we conclude that the District Court was right in its disposition of the question of interest on profits.

[9] 5. The expenses of salesmen: Defendant had two salesmen, Kernan and Schow, who had been in defendant's employ for some years prior to the infringement. After the sale of the infringing devices was begun, no change was made in the compensation of the salesmen, and while selling the infringing devices they also continued to sell defendant's other products. The master allowed defendant 35.65 per cent. of the expenses for salesmen which represents such per cent. of the total expenses of salesmen as corresponds to the per cent. which the sales of infringing machines bear to the total sales of defendant's business. Defendant insists that 90 per cent. of salesmen expenses should be credited in favor of defendant.

There is no evidence that Schow devoted 90 per cent. of his time to the sale of infringing machines, Schow not having testified and the testimony in that regard not being on knowledge but amounting only to estimates based on general recollection of some of the correspondence and of orders received in the ordinary course of the business.

Kernan, however, testified without contradiction that about 90 per cent. of his expenses were attributable to the sale of the infringing machines. No record was kept as against these machines and no apportionment made by defendant on its books until the accounting was begun. Kernan, however, was very active and spent time, effort, and money in drumming up a trade and the 90 per cent. estimate of Kernan covers the time and expenses devoted to endeavoring to get business as well as to actual sales.

We think on the evidence that this estimate must be accepted. The facts in this case do not, however, justify the allowance of the full 90 per cent. In a sense, this expenditure was in the nature of a capital investment made to start a new competing business in anticipation of the comparatively early expiration of the patent, the sale of the infringing devices having begun at the end of December, 1909. It seems to us that this expenditure was abnormal and undertaken to create a market and good will for defendant's goods when the patent would expire in May, 1913, rather than to conduct the business normally with a view to making profits, if any, upon the particular machines sold. It is difficult and often impossible to arrive at an accurate apportionment in a case of this kind, and each case must stand on its own facts and the element of good faith must always be considered; and where, as here, it is quite plain that an expenditure was not normal to the business in hand, it would be inequitable and defeat the remedial purposes of the statute to permit a defendant to charge disproportionately all of its "drumming up" trade expenses as a credit to reduce

profits. We are not prepared to say that the apportionment adopted by the master would be applicable in all cases; but, in the state of this record, we think it worked out an equitable result and did substantial justice between the parties.

The decree, as modified, in respect of insurance and taxes, is affirmed, without costs in this court or in the District Court, and the District Court is instructed to make the necessary calculations in conformity with this opinion.