## METALLIC RUBBER TIRE CO. v. HARTFORD RUBBER WORKS CO.*

(Circuit Court of Appeals, Second Circuit.   June 23, 1921.)

No. 165.

1. **Patents ⬤⇒312(1)—Plaintiff in infringement suit must show profits made on sale of infringing article.**

   Though a former decision of the Circuit Court of Appeals establishing the validity of a patent, and defendant's infringement thereof estops defendant from denying the utility of the device and that it was of value, the burden is on plaintiff, suing for profits from the sale thereof, to show that profits had been made.

2. **Patents ⬤⇒318(4)—Only if entire market value of infringing article is attributable to patent device may patentee recover entire profits from sale thereof.**

   In a suit for infringement of a patent on a nonskid wire tread for tires, if the entire value of the whole infringing tire as a marketable article is properly attributable to the patent device, complainant is entitled to the entire profits on all the tires manufactured and sold by defendant embodying such invention; but, if the whole value of such tire is not solely attributable to such device, complainant must separate and apportion by reliable and tangible proof the part of defendant's profits derivable from the use thereof, to establish a claim for more than nominal damages.

3. **Patents ⬤⇒318(4)—Owner of patent on wire tread cannot recover whole profit made by infringer on sale of tires, entire value of which is not attributable to such treads.**

   A tire being a composite structure, each element of which must be credited with its share of the total profit from the sale thereof, the court erred, in a suit for infringement of a patent on a nonskid wire tread for tires, in awarding to plaintiff the whole profit made by defendant on the sale of tires on which such treads were used, there being no evidence that the entire value of such tires was properly attributable to the presence of the wires in the treads.

4. **Patents ⬤⇒318(6)—Royalty payments by infringer for use of other features used in infringing article should be deducted from profits from sale thereof awarded to owner of patent.**

   In a suit for infringement of a patent on a nonskid wire tread for tires, the court, in awarding to plaintiff defendant's profits from the sale of tires containing such treads, erred in refusing to allow defendant credit for royalties paid by it for the use of other features used in connection with such tires, such royalty payments being part of the cost of production, and the fact that one of such payees failed to receive a patent on his device cannot deprive defendant of its right to deduct the amount paid him for work done in the development of a practical method for imbedding a wire, so as to produce an anti-skid function.

5. **Patents ⬤⇒318(6)—Profits from sale of tires without patented wire tread should be deducted from profits awarded to patent owner.**

   In awarding to the owner of a patent on a nonskid wire tread for tires the profits made by an infringer from the sale of tires with such treads, the court erred in not allowing the deduction of profits on tires without the imbedded wire of such patent; any profit gained by an infringer from the use of what was old prior to the date of the patent not constituting any part of the compensation to be awarded to the patentee.

6. **Patents ⬤⇒318(6)—Advertising expenses should be deducted from profits from sale of infringing article awarded to patentee.**

   The advertising of a business being a necessary expense and one of the means by which the profits arise, the amount expended in advertising an article containing an infringed patent device should be deducted from the profits realized on the sale of such article, in ascertaining the amount payable to the owner of the patent on such device.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
Certiorari denied 256 U. S. —, 42 Sup. Ct. 57, 66 L. Ed. —.

**7. Patents ⊛⇒318(1)—Complainant not entitled to royalties from sale of infringing article, where no profits realized.**

Where infringer realized no profits from sales of the infringing article, complainant *held* not entitled, under circumstances of case, to reasonable royalties from sale of such article.

**8. Patents ⊛⇒319(1)—Patentee's assignee cannot recover for lost sales because of infringement, where it sold no articles containing patented device.**

Where neither the assignee of a patentee of a nonskid wire tread for tires nor any concern paying it royalties manufactured or sold tires containing such device, it cannot recover damages for lost sales because of sales of such tires by an infringer.

**9. Patents ⊛⇒318(5)—Interest on profits from sale of infringing article allowable only from date of referee's report as to amount thereof.**

Where the District Court held a patent not infringed, and the infringer ceased its infringement months before a decision of the Circuit Court of Appeals establishing the validity of such patent, so that it could not be regarded as a deliberate and wanton infringer, the court below, on remand, erred in allowing the patentee's assignee interest on the infringer's profits from the sale of the infringing article from the date of the decision of the higher court, where the determination of the amount of such profits was in the hands of a referee during part of such time; interest on an infringer's profits being allowed only from the date of the referee's report ascertaining the amount thereof, or from the date of their first judicial ascertainment, where ascertained by the court, unless such infringement was deliberate and wanton.

**10. Patents ⊛⇒319(3)—What constitutes wanton or deliberate infringement.**

Where an infringer ceased its infringement months before the validity of a patent was established by the Circuit Court of Appeals, on appeal from decision holding noninfringement, the infringer could not be regarded as a wanton or deliberate infringer.

Appeal from the District Court of the United States for the District of Connecticut.

Suit by the Metallic Rubber Tire Company against the Hartford Rubber Works Company. Decree for plaintiff (266 Fed. 543), and defendant appeals. Reversed, with instructions.

Livingston Gifford, Ernest Hopkinson, and Charles S. Jones, all of New York City, for appellant.

Henry F. Parmelee and George D. Watrous, both of New Haven, Conn., for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The Metallic Rubber Tire Company filed a bill in equity against the defendant, in which it alleged the infringement of letters patent No. 609,320, issued to Calvin T. Adams on August 16, 1898, for an improvement in vehicle tires. The bill asked for an injunction and an accounting; the plaintiff claiming as assignee of the patent. The lower court dismissed the bill on the ground of noninfringement. 189 Fed. 402. On appeal to this court in 1912 the patent was held valid and infringed, the decree below was reversed, and the cause remanded, with instruction to enter a decree for the complainant for an injunction, an accounting, and costs. 200 Fed. 743, 119 C. C. A. 187. Accordingly the District Court, on January 30, 1913, entered a decree adjudging the patent valid and infringed, and that the complainant recover from the defendant profits and damages. A perpetual injunction was issued, and the matter of stating the account of profits

and of assessing the damages was referred to a master. On the coming in of the master's report in 1917, exceptions were taken, which the District Judge sustained, and the case was again remanded to the master, who was directed to state an account in accordance with the views expressed in the opinion. 245 Fed. 860. In 1920 exceptions were taken to the master's second report, whereupon the report was modified and confirmed. 266 Fed. 543.

A final decree, filed June 16, 1920, has awarded to the plaintiff the sum of $244,970.25. The court awarded to the plaintiff the profit made on the whole tire during the period of infringement, amounting to the sum of $183,383.53, together with interest at 6 per cent. from November 11, 1912, except for a period of two years; said interest amounting to $61,586.72. Interest was computed from the date of the decision of this court (November 11, 1912), decreeing the validity of the Adams patent and establishing the fact of the defendant's infringement. The period of two years during which interest was withheld covers the time when the matter was in the hands of the master on the reference after the evidence before him was closed. The defendant has brought the case to this court, and claims that the award of the entire profits realized from the sale of the infringing tire was error, and that it was likewise error to award interest from the date of the filing of the opinion in this court establishing the validity of the patent and the fact of infringement.

The specification of the Adams patent states that it relates—

"to means for preventing the yielding tires of bicycles and other wheeled vehicles from slipping on the roadway, as they are particularly apt to do when the roadway is smooth and wet."

And the invention claimed is:

"The combination, with a cushioned vehicle tire, of a tread applied to the entire periphery of the tire, and having metallic wire interwoven with itself, parts of said interwoven wire lying substantially flush with the outer surface of the tread, and forming cushioned anti-slip bearings covering the sides, and bottom of the tread."

Adams did not invent a tire, but a particular type of an anti-skid feature imbedded in the periphery of a plain tread tire. The structure which was held by this court to infringe the Adams patent was a pneumatic automobile tire having hard, rigid, coiled wires imbedded in its tread, and was known as the Midgley tread tire.

It appears that the number of tires containing the infringing tread manufactured by defendant was 29,537. Certified accountants were employed by the plaintiff, and other certified accountants by the defendant, and they spent months in an examination of the books of the defendant company. There was a figure upon which all the accountants agreed. That figure, $121,281.06, was an amount which, taking the same matters into consideration, represented the gross profit for the sale of the infringing tire. It appears that in submitting their report the plaintiff's accountants gave a detailed explanation of the method pursued by them in arriving at the defendant's factory costs and the selling and administration expenses, which resulted in a final showing in their main report of profits of $121,281.06. As the difference be-

tween defendant's and plaintiff's accountants in the matter of factory costs amounted to only $7,952.09 out of a total cost for the infringing tires of over $900,000, and of only $1,375.14 in selling and administration expenses out of a total of over $177,000, the defendant's accountants accepted the plaintiff's statement that the total unapportioned profits upon their agreed items of cost and expense should stand as $121,281.06.

The defendant did not question any of the items by which the accountants agreed upon the factory costs and selling and administration expenses. What the defendant did was to urge that the profits as found should be apportioned between the patented and unpatented features, and that the balance should be offset by certain royalty deductions. The plaintiff, on the other hand, starting with the agreed profits, urged that its own accountants had erred in allowing to the defendant certain costs and expenses totaling over $70,000.

The master, in his report of September 20, 1915, did not consider it necessary to pass upon the legality of all disputed items. He proceeded upon the theory that the complainant was entitled to recover only the profit due to the use of the improvement or addition made by Adams, and that there was no such profit; that, instead of the sales being a result of the inherent merit of the tire, they were the result of the strenuous forcing sales campaign of the defendant company. In the course of his opinion he said:

"It has not been shown that the patentee or the purchaser of the patent ever established a market value for the anti-skid feature of the patent in suit, and it is evident from the proofs in this accounting that the defendant was unable to establish a market value. No testimony has been given to me to satisfy me that the sole salability of the tires in question arose from their possessing the interwoven wire feature embodying the Adams patent. Garretson v. Clark, 15 Blatchf. 70, Fed. Cas. No. 5,248. I find no evidence that the patentee or the purchaser of the patent, would, as a matter of fact, have made any profit whatever if the defendant had not interfered with their rights.

"The development of the wire tread at the Hartford works necessitated a vast amount of experimental work throughout the entire period of the manufacture and sale of this type of tires. Changes and improvements were made as these tires were passing through the only efficient practicable test, that of actual use under varying conditions by the average automobile owner. This required time. Nothing of the kind had ever been made before.

"This action was not brought and prosecuted and financed by an individual or manufacturer, who had invented a thing of great merit; not by one who had spent time and labor and money to perfect a thing of great value; not by one who had made and sold anything, and whose business was being ruined or encroached upon by an unscrupulous, deliberate infringer. The principal value of the Adams patent seems to be based upon the possibility of recovering profits from the honest efforts of this defendant to create a successful metallic non-skid feature in connection with its tires. It is not a case where the purchasers would have a tire with this particular feature or go without a tire."

In arriving at the conclusion that defendant had made no profits, the master deducted the royalties which defendant had paid under the Dunlop and Clincher patents for other features which it used in connection with the infringing tires which it sold. These royalties amounted to $16,800.03. He deducted $77,064.30 for profits on plain tread tires without the infringing device. He also deducted $20,957.15

paid by defendant to Midgley under an agreement made by it with him after the allowance by the Patent Office of his application for a patent. The result of the various deductions allowed by the master showed that a loss, and not a profit, resulted to the defendant from the manufacture and sale of the infringing tires, and that the plaintiff was entitled to nominal damages only. Exceptions were taken to this report, and the District Judge filed an opinion on February 19, 1917, in which he sustained the exceptions and said:

"It therefore seems imperative to hold that the patented improvement has given the entire value to the combination, in which case plaintiff is entitled to recover all the profits, unless the defendant can show—and the burden is on it—that a portion of them is the result of some noninfringing and valuable improvement made by him."

On June 29, 1917, the District Judge filed an opinion in modification of the prior opinion of February 19, 1917, and in this subsequent opinion he said that it was imperative to hold that the patented improvement had given the entire value to the combination, and that the plaintiff accordingly was entitled to recover all the profits. He declared:

"It was my intention to hold that the plaintiff is entitled to recover of the defendant all the profits which have been shown to have been received by the defendant on the manufacture and sale of all tires made by the defendant with the patent in suit incorporated into or built into them, because those tires containing the Adams device, which was for a 'new and specific purpose,' were useless without the improvement for the particular purpose for which they were manufactured, to wit, nonskidding, and that while a plain tread tire without the wire was salable for its purpose, yet it could not be fairly said to this plaintiff that it could not recover all the profits received by the defendant on all tires made by the patented improvement which is a permanently incorporated improvement and impossible of removal or detachment."

He added that, whether right or wrong in his conclusion:

"I feel bound to hold, and do hold, that the case falls within the rule that where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits." "This," he declared, "is the rule to apply here." 245 Fed. 860.

The case having been recommitted to the master, additional evidence was introduced, and in his report filed on January 31, 1920, he declared:

"I am of the opinion that, if the complainant is entitled to any recovery in the peculiar circumstances of this case, it should be on the basis of a reasonable royalty, because the method of allowing and disallowing certain items of cost destroys the foundation for arriving at the various figures of cost, and would result in a finding of net profits, as hereinafter shown, out of all proportion to the real equities in the case. I therefore recommend that, in accordance with the evidence taken before me, a fair and reasonable royalty basis for recovery by the plaintiff would be 1½ per cent. of the total net selling price of the infringing tires sold by the defendant. This latter course seems to me reasonable, owing to the fact that tires of the patent in suit with interwoven wires are not at the present time and never have been a commercial success. The only tires of the character ever manufactured or sold were those which the defendant herein made and placed upon the market ir an effort to test their value, and, as previously found by me, that effort by the defendant conclusively demonstrated that the patent in suit, even though valid and infringed by the defendant's tires, had no commercial value."

But, reporting his findings so as to conform with the opinion of the court, he found a revised net profit of $183,383.53. The plaintiff and defendant each filed exceptions to the master's second report, and the court, in an opinion in which it confirmed the master's finding as to the net profits, directed that a decree be entered for the plaintiff in the sum of $183,383.53, and said:

"Manifestly the plaintiff has been entitled to all profits realized from the infringement by the defendant, and the defendant should be held to pay those profits over, and its own conduct estops it, in my judgment, from any consideration, but the strict application of the established rules; so that, in view of the facts abundantly disclosed, under the application of rule, reason, or justice, it cannot expect to have applied the lesser punishment of assessing 1½ per cent. royalty as the measure of what this plaintiff is fairly entitled to recover, rather than the exact amount of the profits disclosed by the master's report." 266 Fed. 543, 544.

We must therefore determine whether error was committed in entering a decree awarding to the plaintiff all the profits realized in the sale of these tires by the defendant. We quite agree with the court below that, if the Adams device gave to the infringing tires the entire value realized, then the plaintiff was properly awarded all the profits obtained from their sale during the infringing period. In the consideration of this question we think it important, however, to repeat what this court said in Westinghouse v. New York Air Brake Co., 140 Fed. 545, 550, 72 C. C. A. 61, 66, speaking through Judge Wallace, as follows:

"As has been already suggested, the cases are exceedingly rare in which the whole marketable value of a machine, or of a collection of devices, can in reason be attributable to a patented feature which embraces merely an improvement in one of its parts. Marketable value is ordinarily the result of various conditions independent of the normal value of the machine itself, and the contribution which the patented part gives to marketable value is necessarily dependent more or less upon these conditions. Enterprise, exploitation, and business methods in introducing and marketing the thing are generally as important a factor as its intrinsic value. The effect of the control of the market, whether by lawful or illegal endeavors, in fixing the marketable value of many products, is shown by what has been accomplished by some of the so-called 'trusts' of the day. Where that part of the thing is of such paramount importance that it really creates the value of the whole, the doctrine that the value of the monopoly of the part is measured by the marketable value of the whole may reasonably be applied, notwithstanding the marketable value of the whole may from extraneous causes be out of all proportion to its normal value. But, where that part of the thing is relatively an unimportant factor in the normal value of the whole, the application of the doctrine is likely to lead to inequitable results."

[1] It is true that the former decision of this court establishing the fact of the validity of the Adams patent and of defendant's infringement estops the latter from denying the utility of the Adams device and that it was of value. But, as was said in Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Manufacturing Co., 225 U. S. 604, 616, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, no matter how great the presumptive or actual value of that patent might be, it would not follow that the defendant had made a profit by the sale of the infringing tire. The plaintiff, having sued for profits,

was under the burden of showing that profits had been made. This it has failed to do to the satisfaction of the master, who has found that an actual loss resulted from their sale.

[2] If the entire value of the whole infringing tire as a marketable article is properly and legally attributable to the device of the Adams patent, the complainant is entitled to the entire profits on all the tires manufactured and sold by the defendant which embodied the Adams' invention. But, if the whole value of complainant's infringing tire as a marketable article is not solely attributable to the device of the Adams patent, the complainant must separate and apportion by reliable and tangible proof the part of the defendant's profits which are derivable from the use of it in order to establish a claim for more than nominal damages. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Westinghouse Co. v. Wagner Co., supra; Hurlburt v. Schillinger, 130 U. S. 456, 472, 9 Sup. Ct. 584, 32 L. Ed. 1011; Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371; Wales v. Waterbury, 101 Fed. 126, 41 C. C. A. 250. In Wales v. Waterbury, supra, which was decided by this court, we said, in speaking of the defendant:

"The profits for which he is to account are not the total profits, but those only which are attributable to the * * * patented invention. This has always been the rule, and it is a manifestly just one upon principle."

And more recently in Underwood Typewriter Co. v. Stearns, 227 Fed. 74, 78, 141 C. C. A. 622, 626, this court declared that—

"In determining the profits and damages recoverable for infringement of a patent for a device which constitutes only one feature of the machine or structure sold by defendant, it is the settled rule that the burden of proof rests on the complainant to separate or apportion defendant's profits between the patented and unpatented features and by evidence which is reliable and tangible."

[3] We certainly are far from finding in this record any evidence whatever that the entire value of the infringing tires was properly and legally attributable to the presence of the wires in the treads. We are quite unable to say that without that device there would have been no market for the tires, and that the defendant's structure would have been noncommercial. The value of a tire depends upon the following parts among others:

(1) The part which secures the tire to the wheel, such as the clinchers or wires.

(2) The carcass.

(3) The tread of the tire.

(4) The inner tube and the provisions in the form of construction of the shoe or cover to protect the inner tube from abrasion, or puncture, or creeping, and to permit it to be inflated with facility and to enable it to assist the clincher or other holding device to hold the shoe or cover to the rim.

The nonskid feature of the tread does not constitute the sole value of the tire. There are various other features which are equally as intimately attached to and which become as much a part of the completed tire as the nonskid feature of the tread. The defendant applied the infringing tread tire to three existing types of tires, the "Clincher,"

"Dunlop," and "QD." These types were made either under patents for which the defendant paid royalties or which it had purchased outright, and which had undoubted value. A tire is a composite structure, and built up element by element and part by part; each of its parts having a distinct and separate function to perform. Each element must be credited with its share of the profit going to make up the profit from the total structure; and we are satisfied that the instant case is not the "exceedingly rare" case, alluded to in our decision in the Westinghouse Case already quoted, in which the whole marketable value of the article can in reason be attributed to the patented feature made use of in one of its parts. It was error, therefore, to award to the plaintiff the whole profit made by defendant on the sale of the infringing tire.

[4] The District Judge was in error in refusing to allow the defendant credit for the royalties paid by it to Dunlop, Clincher, and Midgley for the use of their devices. Such royalty payments, when the inquiry concerns profits actually received by a defendant, are properly regarded as part of the cost of production. Elizabeth v. Pavement Company, supra; Herman v. Youngstown Car Mfg. Co., 216 Fed. 604, 609, 132 C. C. A. 608. What was paid Midgely is not to be regarded as a gratuity, but as an actual expenditure for work done in the development of a practical method for imbedding a wire in such way as to produce an anti-skid function. It is to be regarded as a legitimate item of cost, as much so as the outlay for the necessary machinery to make the infringing tire. The fact that Midgley ultimately failed to receive a patent cannot, under the circumstances, deprive the defendant of its right to deduct the expenditure along with the other items of cost.

[5] The District Judge was in error in refusing to allow the deduction of $77,064.30 for profits on tires identical with the infringing structures, but which did not have the interwoven or embedded wire of the patent in suit. In his first opinion (245 Fed. 860, 866) he did allow it, and stated that he did so for the reason that the plain tread tire was and is satisfactorily used without the wire of the patent in suit, and such tires would not have infringed. Thereafter, however, as we have seen, he changed his opinion in this respect, and filed a memorandum in modification thereof.

The difficulty is that the court failed to distinguish between the cases in which, but for the patented improvement, the device would have had no sale at all, and for the wrongful use of which the infringer is made to give up all of his profits, and the cases in which the patented device could be taken away without affecting the sale of the article for the purpose for which it had been previously used, and for the wrongful use of which device the defendant can be called upon to give up only the profits resulting from the use of the addition.

The authorities hold that any profit gained by a defendant from the use of what was old prior to the date of the patent infringed cannot constitute any part of the compensation to be awarded to the patentee. In the instant case the market value of the addition made by defendant to the old tire is easy of ascertainment. Both kinds of tires were man-

ufactured and sold by defendant side by side. The concurrent operations thus furnish a basis of ascertainment. They show that the profit on the sales of an equal number of plain tread tires, arrived at by including exactly the same items of cost used in determining the profits received from the infringing tire, would have been $77,064.30.

[6] In ascertaining the amount of aggregate profits, there was originally deducted the sum of $27,278.56 expended by defendant in advertising. It was subsequently admitted by plaintiff's accountants that, instead of $27,278.56, the sum of $37,735.79 had been spent in advertising the infringing tire, and an allowance of that sum was made by the master in his second report, and this was approved by the District Judge. The defendant is certainly entitled to a credit for its advertising expenses. This court, in Gordon v. Turco-Halvah Co., 247 Fed. 487, 159 C. C. A. 541, said:

"The advertising of a business is a necessary expense, and, unless something to the contrary appears, must be reasonably regarded as one of the means by which the profits arise. There is no reason to distinguish between it and any other expense by which the sales are made, such as salesmen's commissions, or salaries, or the like."

It appears that during the accounting period the defendant expended for advertising account $572,481.53. This advertising necessarily inured to the benefit of the Midgley or infringing tire, and the business in those tires should be charged with a proportionate amount of that expense which should be ascertained by prorating the total advertising account in the ratio that the Midgley sales bore to the total sales. It does not appear whether the sum of $572,481.53 included the amount expended in the sole advertising of the Midgley tires. If so, it would be necessary that such sum should be deducted from any amount which might be found due because of the amount expended for general advertising purposes. The defendant could not be credited twice for the same expenditures, but we do not understand that has been done.

[7] As respects the recommendation of the master in his report of January 31, 1920, for the payment of 1½ per cent. royalty, to which reference has already been made, it is evident that the master was led to that recommendation because of the rejection of the recommendation contained in his earlier report that there were no profits to which the plaintiff was entitled. The circumstances of this case do not seem to us to make it a fit case in which to apply the principle of reasonable royalties laid down in Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398. We cannot but think that the payment of a royalty under all the circumstances of even 1½ per cent. would be in the nature of a gratuity.

[8] There is no evidence in the record of any lost sales. The number of infringing tires was shown, but it does not appear that the plaintiff, as a consequence of the defendant's sales, lost the sale of a single tire containing the device of the patent. Indeed, it appears that at no time during the life of the patent has he ever manufactured a tire containing the Adams device. Neither has any concern paying royalties to the plaintiff manufactured such tires and placed them on the market. The plaintiff, therefore, has lost no sales because of

defendant's sales, and has no claim for damages as distinguished from profits.

Assuming that the gross profit was $121,281.06, as agreed upon by the accountants on both sides, there would then be the following deductions:

Profits on plain tread tires...............................................$77,064.33
Royalties to Dunlop, Clincher, and Midgley.............................$37,757.13
Corrected amount allowed for advertising...............................$10,457.23 .

[9] The conclusions reached upon the questions already considered probably make it unnecessary to determine the matter of interest. But it may not be improper, in view of all the circumstances and the argument of the question in this court, that we should point out the error of the court below in allowing interest from the date of the decision of this court holding the patent infringed and which was rendered on November 11, 1912. The defendant is thus required to pay interest during the time the matter was in the hands of the master on the reference. In making his ruling on the subject of interest, the District Judge stated that he was well aware that his ruling was based on no rule that could be found in the books, and that precedent did not sustain it, except by implication. He thought justification of his conclusion might be found, however, "when a full review of the whole case is had and the facts surrounding it are carefully considered." The interest as fixed by the decree, and as heretofore stated, amounted to $61,586.72. The rule as to interest on profits is stated in Walker on Patents (5th Ed.) p. 828, as follows:

"Interest on infringer's profits is allowed from the date of the master's report, which ascertains the amount of those profits, or from the date of their first judicial ascertainment, in cases where they are first ascertained by the court. Interest is in the discretion of the court."

In Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, where the court was satisfied that the infringement was not wanton, it was held that the defendant should not be charged with interest before the final decree. The court said:

"Interest is not generally allowable upon unliquidated damages. We will not say that in no possible case can interest be allowed. It is enough that the case in hand does not justify such an allowance."

In Illinois Central Railroad Co. v. Turrill, 110 U. S. 301, 4 Sup. Ct. 5, 28 L. Ed. 154, the original decrees were rendered in 1874, and were affirmed in the Supreme Court in 1876 (94 U. S. 695, 24 L. Ed. 238), but were sent back to ascertain how much should be deducted for errors in the accounts as then stated. They came again before the Supreme Court in 1884, when they were affirmed. The court allowed interest from the date of the master's report in 1879. Chief Justice Waite, speaking for the court, said:

"If the decrees had been entered originally for the present amounts, the patentee would have been entitled to interest from 1874. That was settled in Railroad Company v. Turrill, 101 U. S. 836, which was one of the cases affirmed in whole at the former hearing in this court. Under these circumstances, it seems to us not at all inequitable to allow interest on the corrected amounts from the date of the master's report in 1879."

In Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664, interest was allowed from the day when the master's report was submitted to the court, and it was said that the profits allowed—

"have been considered as a measure of unliquidated damages, which, as a general rule, and in the absence of special circumstances, do not bear interest until after their amount has been judicially ascertained. * * * Nothing is shown to take this case out of the general rule."

The delay between the filing of the bill in June, 1874, and the ultimate decision of the case, was thus very considerable, although not as great by several years as it is in the present case. It was argued in the Supreme Court in November, 1886, and decided in March, 1888. The delay was not explained; neither was it commented upon in the opinion.

In Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809, it was held that interest from the date of the master's report was properly allowed on the amount of profits reported by the master and decreed by the court. The court said that—

"Delay caused by the court, or not attributable to the plaintiff, in coming to a conclusion on the master's report, where the amount found by that report is confirmed, ought not to deprive the plaintiff of interest on the amount found by the master. Under such circumstances, the account ought to be considered as liquidated on the day when the master's report is filed."

In National Folding Box & Paper Company v. Dayton Paper Novelty Company (D. C.) 97 Fed. 331, a case in the Circuit Court for the Southern District of Ohio, the master had filed a first report on May 13, 1898, and on June 23, 1898, he filed a substituted report. Both reports had been set aside, and the court considered the question of profits de novo. The result reached was in effect a substantial confirmation of the first report of the master. Judge Taft allowed interest from the filing of the first report, saying:

"I think it within the power of the court to treat the filing of that report as a judicial ascertainment of the damages, and to allow interest at 6 per cent. on the sum of $12,275.51, from May 13, 1898. It would be unjust to charge to the complainant the loss sustained by the delay from that time to the filing of the opinion."

A previous opinion in the case had been rendered by Judge Taft (95 Fed. 991, 996), in which he had allowed interest on "the amount found due from January 1, 1893," because "the defendant had full notice of complainant's rights, and chose deliberately to run the chances of the validity of the patent." But on a petition for reargument Judge Taft modified this in the manner stated above, feeling "constrained" to do so, as he expressed it, by the weight of the authority of the cases in the Supreme Court.

These cases show that as a general rule interest is to be allowed from the date of the master's report, but that circumstances may justify interest from an earlier date. In Oehring v. Fox Typewriter Co., 251 Fed. 584, 588, 163 C. C. A. 578, this court said that perhaps it might be inferred from the decisions of the Supreme Court that interest might be allowed from a date earlier than the master's report, if

infringement was proved to be wanton and deliberate. In that case, however, we did not think the infringement was wanton, and interest was allowed only from the date of the master's report.

[10] This leads to the inquiry whether in the instant case the defendant was a wanton and deliberate infringer. The master in the report filed on September 20, 1915, found that the defendant was an innocent infringer. The District Judge however, thought the defendant a deliberate infringer. "Here we have," he says, " 'deliberate infringement,' and defendant ought not to complain if it has to pay for it." Upon a review of the facts we do not think it can be said that defendant deliberately and wantonly infringed what it knew to be a valid patent. Inasmuch as the District Court, when the question originally came before it, held the Adams patent not infringed, it must be admitted that the validity of that patent was open to honest doubt, at least until this court, on the appeal from that decision, established the validity of the patent; and as the defendant had ceased its infringement months before the fact of validity was established, the defendant cannot under the circumstances be regarded as a 'deliberate and wanton' infringer.

In Oehring v. Fox Typewriter Co. the patent involved was originally held invalid. 180 Fed. 476. This court reversed that holding in 202 Fed. 753, 121 C. C. A. 119. In view of the original decision of the lower court holding the patent invalid, we held in 251 Fed. 584, 589, 163 C. C. A. 578, that we could not say that the infringement was wanton, notwithstanding that there "were some features indicating a deliberate purpose to infringe." In the instant case we are unable to discover any indication of a deliberate purpose wantonly to infringe. There is no reason, therefore, for taking the case out of the general rule. We are constrained to the conclusion that the court below fell into error in the particulars which we have pointed out, and that the decree below was accordingly erroneous.

The decree is therefore reversed, and the court below is instructed to modify the decree to make it conform with this opinion.